| 211      633|
|         215      335|

# Bryden's Estate.

*Lunacy—Weak-minded persons—Evidence—Act of June* 19, 1901, *P. L.* 574.

Before an estate can be taken from the owner and transferred to a guardian under the Act of June 19, 1901, P. L. 574, it must be established that the respondent is so weak in mind that he is unable to take care of his property, and in consequence thereof is liable to dissipate or lose the same and to become the victim of designing persons.

The act is for the protection of the respondent and is not intended to prevent the owner of an estate from doing with his own what he pleases in order that his children may inherit a greater amount; nor is favoritism of one child over another evidence that the respondent is the victim of a designing person.

Proceedings were instituted under the Act of June 19, 1901, P. L. 574, against a woman seventy-six years old. The proceedings were instituted by five of the seven children of the respondent. Her estate consisted of about $50,000, largely in bonds. The bonds were left in the hands of a friend and neighbor who was the vice president of a bank. The latter had charge of them for twelve years. The income was deposited in bank and drawn by checks signed by a daughter who lived with her mother and took care of her. During respondent's illness she encroached slightly on her principal, and she also presented to the daughter who lived with her a horse and harness costing $650. She also gave her daughter other presents amounting to about $250. The total encroachment on capital was about $1,200. Respondent appeared in court and seemed to possess the mind and memory usually found in persons of her age. A number of disinterested witnesses testified to her capacity. *Held,* that the petition was properly dismissed.

Argued April 12, 1905. Appeal, No. 103, Jan. T., 1905, by A. M. Bryden, John McG. Bryden, Elizabeth B. DeMun, James J. Bryden and Helena H. Hughes, from decree of O. C. Luzerne Co., No. 65 of 1904, dismissing petition against an alleged weak-minded person in Estate of Elizabeth Bryden. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Petition against an alleged weak-minded person under Act of June 19, 1901, P. L. 574.

FREAS, P. J., filed the following opinion:

The petitioners are five of the seven children of Elizabeth Bryden, and they ask for the appointment of a guardian for the estate of their mother on the ground that "she has become so weak in mind that she is unable to take care of her property, and in consequence thereof is liable to dissipate or lose the same and to become the victim of designing persons."

Her estate consists of a house and lot in which she lives, worth $6,500; and bonds amounting to $42,000, yielding an annual income of about $2,075. These bonds are in the possession of W. L. Watson, vice president of the First National Bank, of Pittston, who reinvests the funds as the bonds mature, and collects the interest, which latter he deposits in cash in the bank to the credit of Mrs. Bryden. The money is drawn out of the bank by checks signed by Agnes Bryden, her daughter, who holds a power of attorney from her mother, authorizing her so to do. Mr. Watson has been a friend and neighbor

of the family since 1861, and for the past twelve years has had charge of the bonds, and as he states, it has been a voluntary work of kindness on his part. The entire income has lately been expended, and in addition the sum of $1,200 was spent, which money came from a mortgage not in Mr. Watson's care. Otherwise the principal has not been encroached upon.

Mrs. Bryden lives in her own home with her only unmarried child Agnes, who is about thirty-five years old. The mother is perfectly satisfied with her daughter's services, and the disinterested witnesses say she has faithfully cared for her mother. For the past four years Mrs. Bryden has been in ill health and the services of a nurse were necessary, whose pay is $12.00 per week and her board. She keeps a servant at $3.00 per week, and pays $18.00 per month for the care of a horse. Agnes does the buying, runs the household, pays the bills, and assists in the care of her mother. She has also doctor and drug bills, household expenses, taxes, insurance and the usual expenses incident to keeping alive and owning property. A little figuring will show that $2,075 per year is not too much with which to pay these necessary expenses. The $1,200 obtained from the mortgage were spent in these ways: Mrs. Bryden presented Agnes with a horse and harness costing $650 and she had a trap repaired at a cost of $100. These are used by the mother as well as the daughter. She also gave Agnes a diamond pendant worth $175, and paid $50.00 and $75.00 for repairs to a sealskin coat given Agnes by her father in his lifetime. Her house was afire and she spent more money in repairs than she got from the insurance company. Agnes took trips with her mother and two trips alone to New York city. She also gave $120 to her son Alexander. It is insisted by the petitioners that the expenditure of the $1,200 is evidence of a disposition to dissipate or lose the estate, and that she may become the victim of designing persons. The real causes of this proceeding are the gift of the horse and pendant to Agnes, and the failure of other children to obtain money from their mother. That she should discriminate in favor of her only unmarried child who lives with her and cares for her, is not surprising or unnatural. While the horse was a gift to Agnes yet its use and enjoyment are as much the mother's. It is her plain duty under the circumstances to dress her daughter, and we see

nothing extravagant in paying for the repairs of a coat given the daughter by her father. We have left, then, the gift of the pendant, and we need not say that a mother seventy-six years old, worth $48,500, may buy her daughter a piece of jewelry worth $175 without being thought a victim of a designing person. Under any view of the case this woman has not lived extravagantly, nor has she dissipated her estate.

But while thus considering her expenditures we must not lose sight of the basic principle involved, as laid down in Lines v. Lines, 142 Pa. 149, that a man may do what he pleases with his personal estate during his life. He may even beggar himself and his family if he chooses to commit such an act of folly. When he dies, and then only, do the rights of his heirs attach to his estate. The Act of June 19, 1901, P. L. 574, has not changed the law in this respect one iota. Before an estate can be taken from the owner and transferred to a guardian, it must be established that the respondent is so weak in mind that he is unable to take care of his property, and in consequence thereof is liable to dissipate or lose the same and to become the victim of designing persons. The act is for the protection of the respondent and is not intended to prevent the owner of an estate from doing with his own what he pleases in order that his children may inherit a greater amount. Nor is favoritism of one child over another evidence that the respondent is a victim of a designing person, for a parent may make such distribution among his children as he may see fit, either during life or by will after his death, so long as it is the free and conscious act of a sane mind. Applications of this nature are not to be encouraged and should not be granted except in a clear case. As is declared in Hoffman's Estate, 209 Pa. 357, it is a dangerous statute, easily capable of abuse by designing relatives to accomplish the very wrong intended to be guarded against, and therefore to be administered by the courts with the utmost caution and conservatism. It is the policy of our law to allow an owner to manage his own estate, and it can be taken from him only for his own personal good and not because his children think they or some one for them can manage it to better advantage.

The respondent is very far from being so weak in mind that she is unable to take care of her property. She appeared in

court under the most trying circumstances a person can be subjected to, and seemed to possess the mind and memory usually found in persons of her age, and all disinterested witnesses were of this opinion. She allows her securities to remain in the hands of Mr. Watson where they have been for twelve years and who is well qualified to execute the trust. In fact if this court appointed a guardian, Watson would be selected as the friend of the respondent best qualified for the position. The estate cannot be converted without his knowledge or consent, and in case of danger he would be the first to give the alarm. All that can reasonably be expected of a woman seventy-six years old, in the management of her estate, is the selection of a competent and trustworthy agent, and this she has done. The court could do no more.

And now October 15, 1904, the petition is refused.

*Error assigned* was decree dismissing petition.

*Cormac Francis Bohan,* for appellants.

*B. R. Jones,* with him *Thomas H. Atherton,* for appellee.

PER CURIAM, May 1, 1905:

This is a very clear case of attempt by children to take their mother's property out of her control not in her interest but in their own, and is an illustration of the dangers of the statute referred to in Hoffman's Estate, 209 Pa. 357.

The decree is affirmed on the opinion of the court below.