## In re Hall

*Hugh Murtagh,* for petitioner; *Leon S. Rosenthal,* for Sharon Hall Home.

ALESSANDRONI, J., November 13, 1934.—The petition presented in this matter sets forth that the respondent, Elizabeth A. Hall, is of such mental condition that she is liable to become the victim of designing persons and concludes with a prayer that a guardian be appointed for her estate.

The petition is based upon the Act of May 28, 1907, P. L. 292, as amended by the Act of April 1, 1925, P. L. 101, sec. 1, which provides for the appointment of a guardian "Whenever hereafter any person, being a resident of this State, shall become insane or feeble-minded or epileptic, or so mentally defective that he or she is unable to take care of his or her property, and in consequence thereof is liable to dissipate or lose the same, and to become the victim of designing persons. . . ."

It is apparent from a casual reading of the act that mental deficiency must appear, and further that it will result in the dissipation of the estate or the victimizing of the respondent by designing persons. Our review of the testimony firmly convinces us that a proper case for the intervention of the court has not been presented. The evidence discloses that the respondent, who is 67 years of age, has been failing in health from an attack of pneumonia and a hemorrhage which followed it. She is a school teacher, and her normal weight is 85 pounds, but because of a stomach disturbance she suffers from malnutrition and has dropped in weight to 62 pounds. One of the physicians testified that she is emaciated, unable to feed herself, and bedridden. He found also that she was not of unsound mind but had a fear that she would not have sufficient funds to last her for the rest of her life. She is possessed of an estate in excess of $20,000, is afraid of designing persons, and anxious to keep her money from being dissipated. This physician further testified that she was not sure as to the amount of her income or the pension which she is to receive from the board of education.

The fact that she was a school teacher and succeeded in saving an estate in excess of $20,000 bespeaks a frugal and conservative nature. While it was

testified that her physical condition affects her mental condition, the same may be said of almost any person physically disabled. The other physician who examined her stated clearly that she was not mentally deficient but was apprehensive and fearful. He testified that the respondent told him she had had so much trouble she was afraid to make a statement. In his opinion, she could not properly take care of her property and was likely to be influenced by designing persons. However, she was able to tell him the extent of her property and that she was not able to look after it herself, but she also told him that she did not want a guardian appointed. As she was bedridden, it was impossible for her to be produced in court.

It is immediately apparent that the petitioner has not proved to the court that the respondent is mentally deficient. Our conclusion is that the respondent is suffering from a serious physical maladjustment which naturally has some effect on her nervous system. This, however, is not sufficient under the Act of 1907 to justify a court in depriving her of the right to manage her own property.

It has been consistently held, in interpreting statutes of a similar nature, that "Before an estate can be taken from the owner and transferred to a guardian, it must be established that the respondent is so weak in mind that he is unable to take care of his property, and in consequence thereof is liable to dissipate or lose the same and to become the victim of designing persons. . . . As is declared in Hoffman's Estate, 209 Pa. 357, it is a dangerous statute, easily capable of abuse by designing relatives to accomplish the very wrong intended to be guarded against, and therefore to be administered by the courts with the utmost caution and conservatism. It is the policy of our law to allow an owner to manage his own estate, and it can be taken from him only for his own personal good and not because his children think they or some one for them can manage it to better advantage": Bryden's Estate, 211 Pa. 633, 636.

The same conclusion was reached in the case of Beers v. Fenner, 14 Dist. R. 478, wherein the respondent was unable to talk, read, or write and had imperfect hearing. The only way she could communicate with others was by means of signs. The court, in refusing to appoint a guardian for her estate, stated: "It is true that her physical disabilities render it much more difficult for her to take care of her property, and, further, that she does not appear to be a bright woman, but there is no provision in any Act of Assembly which authorizes the court to appoint a guardian for a person suffering from physical disabilities or from ignorance, and who, by reason thereof, is unable to take care of his or her property as though in possession of all his powers.

"Every person has the right secured to him or her to the full use and enjoyment of his or her own property, except where such use or enjoyment is modified, qualified or controlled by the legislature, and the courts have no right to interfere in such use or enjoyment, unless within the purview of some Act of Assembly so modifying, qualifying or controlling the same.

. . . . . . . . . . . . . . . . . .

"Ignorance, inexperience, loss of sight, hearing or speech may cause a person to be unable to take care of his property to as good advantage as one possessed of knowledge, experience and all his faculties; but these do not fall within the causes which authorize the court to appoint a guardian to take care of the estate of a person. A person may lack all the desired attributes just mentioned and still not be weak-minded."

In In re Sturgeon, 14 Dist. R. 205, 206, Sulzberger, P. J., in considering a similar question, held: "Before we enter a decree depriving a citizen of such valuable rights we ought to be 'clearly satisfied' of the existence of the weakness in mind charged, and it is manifest that neither inexperience nor defective

knowledge can be intended by the act. The defect must be in the quality of the mind itself."

In Sigler v. Sigler, 18 Dist. R. 345, a similar question was considered, the court stating (pp. 347, 348) : "The difference between insanity, delusion and eccentricity is fully discussed by Judge Agnew in the case of Ekin Heirs v. McCracken, 11 Phila. 534, and in which case he said: 'If one possess sufficient knowledge to know his relations to others, the property he possesses, the proper uses to which it should be applied, and his own interests, and if he have a sufficient power to form his own purposes and to execute them in design, though all these may be low in grade, he yet must be esteemed competent in law to transfer or bargain away his property. It is only when he lacks the power of memory, judgment and self-determining will, or when the powers of his understanding are perverted by delusion, hallucination or a controlling moral infirmity of mind to such an extent as to prevent him from exercising his knowledge and will properly, that he is wanting in legal competency to dispose of his property.' "

The physicians in the case before us testified that the respondent has no delusions or hallucinations, and there is nothing to indicate that she suffers a loss of memory. True, she may be apprehensive that she may not receive her pension from the board of education, or that her income will not be sufficient to provide for her maintenance, but that of itself does not meet the test of mental deficiency required by the decisions in this jurisdiction and the irrefutable logic therein contained. The chief complaint seems to be that the respondent is unwilling to expend all her income or a part of the principal of her estate in order to provide herself with certain comforts which others think she can afford. In In re Silverthorn, 2 Erie 212, a similar question arose and the court stated: "Respondent has the normal mental faculties of a woman of eighty-four and is not in danger of losing or dissipating her property from any cause whatever. In fact the avowed purpose of the petition is not to protect her property, but to enforce further expenditures out of the funds available for her support and maintenance and to provide comforts which she does not now enjoy.

"However desirable this result might be, in providing for the welfare of the respondent, it is certain that the above act cannot be invoked to enforce, through a guardian a higher standard of living for respondent against her will, so long as she has sufficient capacity to protect her property from dissipation and from designing persons." This language applies with equal effect to the case at bar.

The petitioner has referred to the cases of In re Zelinsky, 17 Luz. L. R. 460, and Commonwealth ex rel. v. Bischoff, 65 Pitts. 763. In the former, the court recognized the fact that it was not complying with the provisions of the act but was interpreting the spirit of the act. A similar conclusion was reached in Commonwealth ex rel. v. Bischoff. An impartial analysis of the cases, however, leads us firmly to the conclusion that the court cannot properly extend the provisions of an act of the legislature under the guise of interpreting the spirit which caused its creation. The Act of 1907 specifically provides that a guardian can be appointed only when mental deficiency appears. No interpretation of the act can enlarge its scope so as to make it apply in cases where no mental deficiency exists.

For the foregoing reasons, the petition for the appointment of a guardian for the estate of Elizabeth A. Hall is refused.