345 A.2d 171
**In re ESTATE of William Casey PORTER, Incompetent.**

Supreme Court of Pennsylvania.

Argued March 14, 1975.

Decided Oct. 3, 1975.

Joseph D. Talarico, DeCello, Bua & Manifesto, P. C., Pittsburgh, for appellant.

Robert D. Barozzini, Charles F. McKenna, Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In 1926, appellant William Casey Porter was declared incompetent to manage his estate under the Act of May 28, 1907, P.L. 292, repealed by Act of June 28, 1951, P.L. 612, art. VIII, § 801. In March, 1974, appellant petitioned for an adjudication of competency under section 323 of the Incompetents' Estates Act of 1955.[1] The orphans' court denied the petition and this appeal ensued.[2] We conclude that the orphans' court abused its discretion by rejecting the uncontradicted testimony of appellant's experts that he is competent and therefore reverse.

1. Act of February 28, 1956, P.L. (1955). 1154, art. III, § 323, as amended (formerly codified as 50 P.S. § 3323 (1969)) (repealed by Act of December 10, 1974, P.L. ——, No. 293, § 19) (reenacted as 20 Pa.C.S. § 5517 (Special Pamphlet, 1975)).

2. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1975).

Appellant was born in March, 1896. In 1926, his sister commenced proceedings to have appellant declared incompetent. After a hearing, at which the testimony indicated that appellant suffered from epileptic seizures, he was adjudicated a feeble-minded person and a guardian was appointed to manage his estate, which was then valued at about $60,000. In 1974, his estate was valued at about $250,000.

Since 1927, appellant has been living in the home of a friend, Florance G. Keller, and his wife. The guardian has supplied appellant with a personal allowance and has provided Mr. Keller with funds for appellant's board, room and general maintenance. Appellant currently receives $225 per month, and Mr. Keller receives $325 per month.

On March 29, 1974, appellant filed the instant petition.[3] Notice was given to the guardian and to appellant's niece and nephew,[4] the appellee here. A hearing was held at which a psychiatrist, a psychologist, and a physician who is an expert in the field of geriatrics all testified that appellant is competent. Appellees cross-examined appellant's witnesses, but they did not present any witnesses of their own. On August 9, 1974, the or-

---

**3.** Section 323 of the Incompetents' Estates Act of 1955, Act of February 28, 1956, P.L. (1955) 1154, art. III, § 323, as amended (formerly codified as 50 P.S. § 3323 (1969)) (repealed by Act of December 10, 1974, P.L. ——, No. 293, § 19), under which this proceeding was commenced, provided as follows:
"The court, upon petition and after such notice as it shall direct, may find, after a hearing at which good cause is shown, that a person previously adjudged incompetent has become competent."
This section has now been reenacted as section 5517 of the Decedents, Estates & Fiduciaries Code, 20 Pa.C.S. § 5517 (Special Pamphlet, 1975), whose language is identical. This effected no change in the law and therefore does not alter the disposition of this case or the authority of prior cases construing the former statute. See Statutory Construction Act, 1 Pa.C.S. §§ 1962, 1922(4) (Supp.1975).

**4.** The niece and nephew, Mrs. D. M. Middleton and Mr. Richard P. Bell, opposed the petition in the orphans' court.

phans' court filed an opinion in which it dismissed the petition. Appellant's exceptions were dismissed and this appeal followed.

■ Appellant may be deprived of the full control of his property only if he is an incompetent as defined in 20 Pa.C.S. § 5501:[5]

> " 'Incompetent' means a person who, because of infirmities of old age, mental illness, mental deficiency or retardation, drug addiction or inebriety:
>
> (1) is unable to manage his property, or is liable to dissipate it or become the victim of designing persons; or
>
> (2) lacks sufficient capacity to make or communicate responsible decisions concerning his person."

■ It must be emphasized that a guardianship may not be created, or continued, merely because the person lacks the ability or experience needed to manage large sums of money. A guardianship is proper only if such inability to manage one's property results from "infirmities of old age, mental illness, mental deficiency or retardation, drug addiction or inebriety." In *Urquhart's Estate*, 431 Pa. 134, 135–136, 245 A.2d 141, 142 (1968), we affirmed the principle stated in *Bryden's Estate*, 211 Pa. 633, 636, 61 A. 250, 251 (1905):

> "A man may do what he pleases with his personal estate during his life. He may even beggar himself and his family if he chooses to commit such an act of folly. When he dies, and then only, do the rights of his heirs attach to his estate."

**5.** Section 5501 replaced section 3102(3) of the Incompetents' Estates Act of 1955, 50 P.S. § 3102(3), which was in effect at the time of the proceedings below. Subsection (2) of section 5501 was added at that time. Because it was not in effect at the time of the proceeding below, it could not have formed a basis for the decision of the orphans' court. Moreover, there is no contention that appellant "lacks sufficient capacity to make or communicate responsible decisions concerning his person." Consequently, only section 5501(1) is relevant to our inquiry here.

The decision of the orphans' court appears to rest primarily upon conclusion that the appellant, who is now 79 years old and throughout his life has handled only small sums of money, could not successfully manage about $250,000 in cash and securities. However, regardless of how well-intentioned or how accurate that conclusion is, it is not a legally justifiable basis for continuing to deprive appellant of the full control of his property.

In a proceeding to remove a prior adjudication of incompetency the petitioner has the burden of establishing his or her competency by a fair preponderance of the evidence. *Urquhart's Estate*, supra; *Nagle's Estate*, 418 Pa. 170, 210 A.2d 262 (1965).[6] Here, three well-qualified experts testified that appellant is competent, and their testimony was uncontradicted. The petitioner's burden of proof is not met, as a matter of law, merely because the expert testimony offered by the petitioner is uncontradicted. See *Pearlman's Appeal*, 400 Pa. 350, 163 A.2d 530 (1960). However, as our prior decisions have indicated, the trial court's discretion is certainly not unlimited. See *Post's Appeal*, 364 Pa. 535, 73 A.2d 404 (1950); *Urquhart's Estate*, supra (trial court's decision not to remove an adjudication of incompetency reversed even though some of the conflicting expert testimony supported the trial court's determination).

We hold that the orphans' court abused its discretion by not finding that appellant had met the burden

6. We note that this is a much lighter burden than that upon those who seek to obtain an initial adjudication of incompetency, which we held in *Myer's Estate*, 395 Pa. 459, 462–63, 150 A.2d 525, 527 (1959) to be:

"Proof of mental incompetency must possess such strength and clarity as to lead incontestably to but one conclusion, to wit, that respondent is mentally incompetent. A finding of mental incompetency is not to be sustained simply if there is *any* evidence of such incompetency but only where the evidence is preponderating and points unerringly to mental incompetency. If the finding of mental incompetency is not based on evidence of such quality then such finding amounts to an abuse of judicial discretion."

of proof imposed upon him. The only adverse comment that the orphans' court made concerning the expert testimony was that it failed to disclose whether appellant *might* suffer "grand mal" epileptic seizures if he ceased taking medication. That concern is clearly not a sufficient basis for determining that, notwithstanding the uncontradicted testimony of the experts, appellant had failed to establish by a fair preponderance of the evidence that he is competent. The orphans' court should have granted appellant's petition.[7]

The decree of the orphans' court is reversed, and the case is remanded for entry of a decree in accordance with this opinion. Each party pay own costs.

JONES, C. J., did not participate in the consideration or decision of this opinion.

---

7. Our disposition of this case renders it unnecessary to reach appellant's contentions that (1) the orphans' court erred in excluding the deposition of his personal physician on the ground that appellant's relatives had not been able to cross-examine the deponent and (2) the 1926 adjudication of incompetency is void because appellant was not afforded representation by counsel.