415 A.2d 13

**In the Matter of Lillian CAINE.**

**Appeal of Lillian Caine.**

Supreme Court of Pennsylvania.

Argued April 14, 1980.
Decided May 30, 1980.

Robert J. Manara, Reading, for appellant.

Edward P. Carey, Asst. Atty. Gen., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Section 5501(1) of the Probate, Estates and Fiduciaries Code defines an "incompetent" as

"a person who, because of infirmities of old age, mental illness, mental deficiency or retardation, drug addiction or inebriety:

(1) is unable to manage his property, or is liable to dissipate it or become the victim of designing persons . . . ."

20 Pa.C.S. § 5501(1). The sole question presented on this appeal is whether the evidence supports a decree of the Court of Common Pleas of Berks County, Orphans' Court Division, adjudging appellant Lillian Caine presently "in-

competent" within the meaning of section 5501(1). In our view, the evidence does support the decree. Hence we affirm.

Appellant was born in May of 1909. In 1966 she became a resident of Wernersville State Hospital, a Commonwealth facility for the mentally disabled.[1] No guardian was appointed at that time. Accordingly, pursuant to statute, the facility's Department of Revenue agent took custody of appellant's property. See Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, P.L. 96, § 424, 50 P.S. § 4424 (1969).

In June of 1978, the Commonwealth petitioned the orphans' court for a decree adjudging appellant presently incompetent and appointing a guardian. See 20 Pa.C.S. § 5511.[2] The petition contains an affidavit and competency report of Otto Ramik, M. D., a psychiatric physician employed at Wernersville. The affidavit and competency report state that, based on his personal examination of appellant, Dr. Ramik was of the opinion that appellant is "disinterested, . . . isolates [her]self, lacks insight and judgment." Dr. Ramik's reports also expressed the view that appellant is a "dependent individual that requires assistance and supervision," and is schizophrenic. Dr. Ramik's reports thus concluded appellant "is incompetent to manage her own affairs." Proper notice was given and the court issued a rule on appellant to show cause why she should not be adjudged incompetent and a guardian should not be appointed. The court fixed a return date of July 10, 1978.

1. See The Administrative Code, Act of June 7, 1923, P.L. 498, § 202, as amended, 71 P.S. § 12 (1962); The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, §§ 202 & 401, as amended, 71 P.S. §§ 62 & 111 (Supp.1979); Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, P.L. 96, §§ 201 & 202, 50 P.S. §§ 4201 & 4202 (1969).

2. The Commonwealth's petition was filed pursuant to the settlement of the *Vecchione v. Wohlgemuth* case. See *Vecchione v. Wohlgemuth*, 377 F.Supp. 1361 (E.D.Pa.1974); id., 426 F.Supp. 1297 (E.D. Pa.), aff'd, 558 F.2d 150 (3d Cir.), cert. denied sub nom. *Beal v. Vecchione*, 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977); *Vecchione v. Wohlgemuth*, 80 F.R.D. 32 (E.D.Pa.1978).

Counsel entered an appearance for appellant. On July 10, the court held a hearing on the Commonwealth's petition. Dr. Ramik testified, both on direct and on cross-examination, as to his opinion contained in the Commonwealth's petition. Despite Dr. Ramik's sworn statement that because of appellant's condition her welfare would not be promoted by her presence in court and her presence might endanger others in the courtroom, appellant appeared and also testified.

The orphans' court agreed with Dr. Ramik's assessment, concluding that appellant "is so mentally infirmed that she is likely to dissipate or lose her estate and become the victim of designing persons. . . ." Accordingly, by its decree the court appointed as guardian George Geist, "Guardian Officer" of Wernersville. This appeal followed.

At the outset the Commonwealth presents a procedural contention which purportedly requires an affirmance of the orphans' court decree without a consideration of the merits. According to the Commonwealth, appellant has improperly failed to file exceptions to the court's decree and thus no issues are preserved for appellate review. See *Volkhardt Estate*, 484 Pa. 52, 398 A.2d 656 (1979); *Stanley Estate*, 470 Pa. 483, 368 A.2d 1259 (1976). The present record, however, does not sustain the Commonwealth's contention that appellant has failed to file exceptions. Included in the record is a copy of a signed order of the orphans' court, certified by the clerk of the orphans' court to be true and correct, which provides:

"AND NOW, TO WIT, this 26th day of March, 1980, for the reasons set forth in our most recent opinion, respondent's exceptions filed nunc pro tunc are hereby denied."

From this it is clear that "exceptions nunc pro tunc" were filed. So, too, it is clear that the orphans' court chose to consider the exceptions. See Sup.Ct.O.C. Rule 2.1.[3] Thus

---

3. Rule 2.1 provides:
   "The rules adopted by the Supreme Court regulating the practice and procedure of the Orphans' Courts of this Commonwealth, and the rules adopted by such courts, shall be liberally construed to

we reject the Commonwealth's procedural contention and turn to the merits.

"[A] man may do what he pleases with his personal estate during his life. He may beggar himself and his family if he chooses to commit such an act of folly." *Bryden Estate*, 211 Pa. 633, 636, 61 A. 250, 251 (1905). Accordingly, before a guardianship can be imposed it must be established not only that a person is, under 20 Pa.C.S. § 5501, "unable to manage his property, or is liable to dissipate it or become the victim of designing persons." It must also be established that this "inability to manage one's property results from 'infirmities of old age, mental illness, mental deficiency or retardation, drug addiction or inebriety.'" *Porter Estate*, 463 Pa. 411, 415, 345 A.2d 171, 173 (1975). Moreover, for the Commonwealth to prevail on its present petition, it must establish appellant's incompetency by more than a mere preponderance of the evidence. Rather, it is agreed that the Commonwealth's proof must be clear and convincing.[4]

secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties in interest."

4. The parties' agreement on the applicable standard of proof in applications for an adjudication of incompetency is well-founded. As long ago as *Bryden Estate*, supra, this Court, in adopting the opinion of the orphans' court in that case, stated that "[a]pplications of this nature are not to be encouraged, and should not be granted except in a clear case." Accord, *Colt's Case*, 215 Pa. 333, 64 A. 597 (1906). As recently as *Porter Estate*, 463 Pa. 411, 345 A.2d 171 (1975), this Court noted that the "fair preponderance" standard applicable where a person seeks an adjudication of competency is "a much lighter burden than that upon those who seek to obtain an initial adjudication of incompetency." 463 Pa. at 416 n.6, 345 A.2d at 174 n.6. See *Myers Estate*, 395 Pa. 459, 462 & 463, 150 A.2d 525, 526 & 527 (1959) ("before any person shall be deprived of the right to handle his or her own property and manage his or her own affairs there must be *clear* and *convincing* proof of mental incompetency and such proof must be *preponderating*;" "finding of mental incompetency is not to be sustained if there is *any* evidence of such incompetency but only where the evidence is preponderating and points unerringly to mental incompetency"). Cf. *Elliott v. Clawson*, 416 Pa. 34, 35, 204 A.2d 272, 273 (1964) ("[i]t has long been the law of Pennsylvania that the evidence required to set aside a transaction

■ What is in dispute here is whether the Commonwealth has met this standard. According to appellant, the Commonwealth has failed clearly and convincingly to prove either that appellant suffers from "the infirmities of old age, mental illness, mental deficiency or retardation, drug addiction or ˙inebriety" or that any of these disabilities causes appellant to be "unable to manage [her] property, or . . . liable to dissipate it or become the victim of designing persons." 20 Pa.C.S. § 5501(1). In appellant's view, her own testimony, and not the testimony of Dr. Ramik, is the "best evidence" of her abilities and establishes her competency.

Appellant's contention, based on her own assessment of testimony and not that of the orphans' court, must be rejected. Here, as in *Myers Estate*, 395 Pa. 459, 150 A.2d 525 (1959),

> "the court below had the benefit of not only hearing and observing all witnesses but, most important, had the opportunity to hear and observe the alleged incompetent. We do not substitute our judgment for that of the court below; even though we, had we been sitting in judgment below, might have reached a contrary result . . . ."

395 Pa. at 462, 150 A.2d at 526. Based on its opportunity both to hear and to observe Dr. Ramik and appellant, the court chose to give credence to Dr. Ramik's evaluation of appellant's present condition. That evaluation, setting forth his first-hand knowledge of appellant's condition and her inability to manage her own affairs, amply permitted the factfinder to conclude that appellant presently is incompetent. "Conflicting evidence was presented but the resolution of these conflicts was for the trier of fact. *Kay v. Kay*, 460 Pa. 680, 334 A.2d 585 (1975)." *Garges Estate*, 474 Pa. 237, 243, 378 A.2d 307, 310 (1977). As *Reed v. Universal C.I.T. Credit Corp.*, 434 Pa. 212, 217, 253 A.2d 101, 104 (1969)

on the basis of mental incompetency must be 'clear, precise and convincing'. . . . [citing *Myers* ]").

stated, "[t]his Court does not sit as a trier of issues of fact, expecting to be persuaded that one or the other side is more credible. That is a task for a trial court and we would never invade that area of the judicial process."

The record is clear that here, as in *Colt's Case*, 215 Pa. 333, 64 A. 597 (1906), "[this] proceeding was instituted by disinterested parties manifestly from proper motive and solely to preserve the appellant's estate for [her] own good." 215 Pa. at 335, 64 A. at 598. Our review satisfies us that the orphans' court committed neither error of law nor an abuse of discretion. The orphans' court's decree therefore cannot be disturbed.[5]

Decree affirmed. Each party to pay own costs.

LARSEN, J., filed a dissenting opinion in which KAUFFMAN, J., joins.

LARSEN, Justice, dissenting.

I dissent. There is no clear and convincing evidence in the record which supports a conclusion that appellant "is unable to manage [her] property, or is liable to dissipate it or become the victim of designing persons . . ." 20 Pa. C.S. § 5501(1). On the contrary, the evidence shows that appellant demonstrated accurate knowledge as to her assets and liabilities; that she voluntarily would pay her bills; and that she would seek assistance in discharging her affairs if such were to become necessary.

KAUFFMAN, J., joined in the filing of this dissenting opinion.

5. It must be emphasized that neither our holding nor the holding of the orphans' court in any respect permanently forecloses appellant from personally managing her own property. Appellant is free to seek a subsequent adjudication of competency, 20 Pa.C.S. § 5517, which is to be granted if she establishes her competency by a "fair preponderance" of the evidence. See *Porter Estate*, supra note 4; see generally L. Frolik, Estate Planning For Parents of Mentally Disabled Children, 40 U.Pitt.L.Rev. 305, 310–312 (1979).