**Estate of Anthony Gillis**

*David A. Cicola,* for petitioner.
*John A. Hanna,* for respondent.

EARLEY, *J.,* July 1, 1982 — This matter is before the court on the petition of Anthony M. Gillis, for a decree vacating a guardianship order entered by the Probate Court for Wayne County, Michigan, and directing that his assets be returned to his control.

## FINDINGS

1. Petitioner is Anthony M. Gillis, an individual whose domicile is Indiana County, Pa.

2. In August of 1980, the Probate Court for Wayne County, Michigan adjudicated Mr. Gillis to be a legally incapacitated person, and issued Letters of Guardianship to Bernadine Patrick, Mr. Gillis' niece, a resident of Detroit, Michigan.

3. In November of 1981, the Probate Court for Wayne County, Michigan entertained a petition to vacate the above mentioned Letters of Guardianship, and subsequently issued an order appointing Theodore Monolidis, a Public Administrator of Wayne County, Michigan as successor conservator of Mr. Gillis' estate.

4. By that same order the court directed the successor conservator to hold and marshal the assets of Mr. Gillis " . . . until proceedings regarding Anthony M. Gillis are commenced in the State of Pennsylvania, where Anthony M. Gillis resides, . . . such proceedings are to commence within ninety (90) days of the date of this Order." See Exhibit "C" of Petition.

5. At the time of the Michigan Court's incompetency adjudication, August, 1980, Mr. Gillis was living with his niece in Michigan, having gone

there with his niece in late November, or December of 1979.

6. Mr. Gillis had lived in Indiana, Pa. prior to his travel to Michigan, and he returned to Indiana in August of 1980.

7. Since August of 1980, Mr. Gillis has lived in Indiana at a boarding home, generally under his own supervision and care.

8. Mr. Gillis does not have chronic brain syndrome, or senile dementia, or any other affliction which would affect his memory or ability to care for himself and his assets.

9. Mr. Gillis is competent to manage his own property, and his own affairs, financial and/or otherwise.

## DISCUSSION

### I. Jurisdiction to Determine Competency

Mr. Gillis is presently about 80 years of age. For several years prior to November, 1979, Mr. Gillis resided in Indiana, Pa. Sometime in November of 1979, he went to Knoxville, Tennessee and lived near a personal friend, Mrs. Henrietta Ogle. During that same month, November, 1979, Mr. Gillis travelled to Detroit, Michigan where his niece, Bernadine Patrick, resided.

In late November, 1979, his niece drove Mr. Gillis back to Indiana. At the time, Mr. Gillis had at least $23,000 in savings in a bank account in Indiana. Some, or all of this money was sent to Mr. Gillis' friend in Tennessee and placed in savings accounts. Eventually, this money was transferred back to Mr. Gillis' possession. By this time, Mr. Gillis was again in Detroit, living with his niece. The reasons for the transfer of Mr. Gillis' funds, and the roles his friend and niece played in the transfer

are not entirely clear, nor at this point relevant. Since the Michigan court's incompetency adjudication, Mr. Gillis' funds have remained under the control of his guardian or the successor conservator. It is the court's understanding that the funds are presently under the control of Theodore Monolidis, Public Administrator, in Detroit, Michigan.

In August of 1980, Mr. Gillis returned to Indiana and has since lived at the Vedder boarding home. He brings the present petition seeking return of the funds to his control. Anna Gapshes, Mr. Gillis' sister, opposes this petition.

### Jurisdiction of the Michigan Probate Court

Mr. Gillis argues that the Michigan Court's actions are invalid because that court lacked jurisdiction over him. Among other things, counsel notes that (1) Mr. Gillis lived in Michigan for about eight months, as compared with his several years of residence in Pennsylvania, and (2) that his transport to and his stay in Michigan was in conjunction with his physical illness and did not represent an intention on his part to change his domicile.

In resolving this matter, however, this court will assume that the Michigan Probate Court had jurisdiction over Mr. Gillis when it adjudicated him legally incapacited. As will be discussed, jurisdiction over this matter by the Michigan court during 1980 does not preclude this court from now considering Mr. Gillis' competency. Indeed, the question of the Michigan court's jurisdiction could be considered moot. As will be discussed, the Michigan court, in its order of November 16, 1981, recognized that Mr. Gillis resides in Pennsylvania, and relinquished jurisdiction over this matter to Pennsylvania's courts.

### Respondent's Full Faith and Credit Claim

In support of her opposition to Mr. Gillis' petition, respondent argues that this court must give full faith and credit to the Michigan incompetency decree. Counsel for respondent notes Lusson Petition, 18 D. & C. 2d 794 (1959), and language in Mulholland v. Pittsburgh National Bank, 418 Pa. 96, 209 A. 2d 857 (1965).

First, it should be noted that these two cases appear to be the only major Pennsylvania cases which directly discuss full faith and credit in the context of competency. Examination of these two cases, and case law from other jurisdictions, indicates that our duty to give full faith and credit to the Michigan adjudication does not preclude this court from entertaining Mr. Gillis' petition, and finding that he is competent to handle his own financial affairs.

### a. The Mulholland Case

In the Mulholland case the court noted its duty to give a foreign decree full faith and credit. It held however, that it was not required to recognize a Florida decree which established competency only from 1960 onward, in view of a Pennsylvania court's finding of re-establishment of competency in 1955. The court noted that (1) the original incompetency decree, made by a Florida court in 1953, was based on inebriacy, a condition subject to change, (2) the Florida court had relinquished jurisdiction to Pennsylvania in 1954 with general language and (3) that the individual had been only temporarily in Florida, as opposed to having had a permanent residence in Pennsylvania.

These three factors are present in this case. There is nothing before the court to indicate what

the Michigan court based its finding of incapacity on. The deposition of Dr. Lucid, Mr. Gillis' physician in Michigan, and exhibits attached to respondent's answer suggest that the Michigan court was persuaded by Dr. Lucid's opinion that Mr. Gillis suffered from "chronic brain syndrome." The April, 1982 deposition of Dr. Singh, Mr. Gillis' physician for about six years, strongly refutes the Michigan doctor's conclusion. Dr. Singh detected no chronic brain syndrome or any other signs of mental deficiency. Rather, Dr. Singh testified that Mr. Gillis' poor mental condition at a certain time in 1980 could be attributable to an acute illness or a reaction to medication. See deposition of Bijai B. Singh, filed May 4, 1982, pages 11, 21-22. In addition, Dr. Lucid, the physician who diagnosed Mr. Gillis as having chronic brain syndrome, indicated that the condition need not be permanent. See deposition of Dr. David Lucid, page 15.

Hence, like the Mulholland case wherein the court noted that the incompetency finding had been based on a condition which need not be permanent, inebriacy, the Michigan court's finding was based on a mental condition which is no longer present, and arguably, was mislabelled as "chronic brain syndrome."

The second factor noted by the Mulholland Court is also present. The November 16, 1981 order from the Michigan Probate Court directed that the successor conservator control Mr. Gillis' assets "until proceedings regarding Anthony M. Gillis are commenced in the State of Pennsylvania, where Anthony M. Gillis' resides. . . ." The language used by the Michigan court is broad, and in no way purports to limit a Pennsylvania court's inquiry into this matter. By its use of the general word "proceedings," and its recognition that Mr. Gillis now re-

sides in Pennsylvania, it is clear that the Michigan court relinquished jurisdiction to Pennsylvania's courts.

In view of such relinquishment, formal restoration of competency by the Michigan court is not necessary. Pennsylvania's courts have been given full authority to determine the competence of Mr. Gillis. Any determination made by this court with regard to Mr. Gillis' competency does not constitute judicial interference with the legal processes of the Michigan court. See Mulholland, 418 Pa. 110.

Respondent argues that jurisdiction was relinquished to Pennsylvania only for the purpose of having a Pennsylvania conservator appointed. The language of the Michigan order does not make any such limitation however. Although the third paragraph on the second page of the order suggests that the Michigan court *anticipated* that a successor fiduciary would be appointed, there is no language to indicate that the Michigan court transferred jurisdiction *only* for the appointment of a Pennsylvania fiduciary. Had the Michigan court intended that "proceedings" in Pennsylvania deal only with appointment of another conservator, it could have so provided.

Likewise, the third factor noted by the Mulholland Court, that the individual had been in the foreign state only temporarily, is present here. Mr. Gillis was in Michigan less than nine months. He had been living here in Indiana for several years prior to being in Michigan; he returned here, and has remained here. There was evidence that his stay in Michigan was at least partly shaped by the fact that he was suffering from physical problems at the time. Aside from the presence of his funds with the Michigan conservator, and perhaps relatives, Mr. Gillis appears to have little connection

with Michigan. As noted earlier, the court does not view these factors as necessarily indicative of a lack of jurisdiction in the Michigan court. These factors do, however, indicate that Pennsylvania is the most appropriate place for judicial resolution of the question of competency.

b. The Lusson Case

The court does not find the other case cited by respondent, Lusson Petition, 18 D. & C. 2d 794 (1959) persuasive. Lusson predated the Mulholland decision by more than five years. Although the Lusson court cited several cases stating that the decree of a sister state as to an individual's incompetence should be final and conclusive, there is authority to the contrary: See McNeill v. Harlow, 81 Fla. 401, 88 So. 127 (1921); Application of Witten, 355 N.Y.S. 2d 533 (1974); 41 Am. Jur. 2d, Incompetent Persons, §§23, 24. Most importantly, unlike the foreign court in the Lusson case, the Michigan court has relinquished jurisdiction. Nor were the other two factors noted by the Mulholland case and discussed above, considered by the Lusson court.

The Lusson court concluded that the Pennsylvania statute which allows an adjudication of competency for one previously found incompetent inapplicable where the incompetency decree had been made by another state: 20 Pa.C.S.A. §5517, formerly, 50 P.S. §3323. This court does not agree. Research has disclosed no appellate decision dealing with this point, nor has the Lusson case been cited for this point. The statute does not limit its application to Pennsylvania adjudications. The Lusson court gave little reason for its conclusion, and cited no authority. See Lusson 18 D. & C. 2d 799-800.

The statute was undoubtedly enacted out of a recognition that mental infirmities, even serious ones, are not necessarily permanent. Considering the seriousness of a determination that an individual is unfit to manage his own affairs, a method by which that person might show that he has regained competency is quite important. These considerations are sound, regardless of where the incompetency decree was made.

In summary, it can be assumed that the Michigan Probate Court had jurisdiction over Mr. Gillis when it found him incompetent to manage his affairs. Our obligation to give full faith and credit to decrees of other states does not require that this court treat the Michigan decree as conclusive in view of: (1) the Michigan court's relinquishment of jurisdiction over this matter to Pennsylvania, (2) Mr. Gillis' being domiciled in Pennsylvania, without any intention to reside in Michigan, and (3) the fact that physical and mental conditions which lead to adjudications of incompetency are not necessarily permanent. This is not a case in which one adjudicated incompetent has come to court solely to challenge a foreign decree. It has been more than a year and one half since Mr. Gillis was found incompetent by the Michigan court. Hence, consideration by this court of Mr. Gillis' competency is not contrary to "full faith and credit" principles.

## II. PETITIONER'S COMPETENCY

"In a proceeding to remove a prior adjudication of incompetency the petitioner has the burden of establishing his or her competency by a fair preponderance of the evidence." Estate of Porter, 463 Pa. 411, 416, 345 A. 2d 171 (1975). As noted in footnote 6 of Porter, this burden is much lighter than that

imposed upon those who seek the initial adjudication of incompetency. Mr. Gillis has met this burden.

Mr. Gillis supported his petition with his own testimony, the testimony of Mrs. Vedder, owner of the boarding home where he lives, and the deposition of his physician.

Mr. Gillis' testimony and conduct in the witness chair indicated that he is familiar with his property and income, his potential heirs, and his surroundings. He understood the nature of the proceedings involved here, as well as the proceedings which transpired in Michigan. He was alert, responsive and appeared to have a very good memory.

Mrs. Vedder, who has known Mr. Gillis for more than two years, testified that he looks after his own personal needs, has a good memory and manages his own finances. Mr. Gillis receives black lung and social security benefits. Mrs. Vedder indicated that, in accordance with boarding house rules, rent and board are deducted from his benefits and the balance remains with Mr. Gillis. Mr. Gillis pays his other expenses, such as telephone bills and the cost of personal items. There was no indication from Mrs. Vedder that Mr. Gillis ever squanders his money.

Although Mr. Gillis' physician, Dr. Bijai B. Singh, was not present at the hearing in this matter, his April 22, 1982 deposition was offered in evidence. Dr. Singh, whose qualifications as a physician were established, has been Mr. Gillis' doctor since September of 1976. Between September, 1976 and March, 1982, Dr. Singh saw Mr. Gillis about 22 times. A reading of Dr. Singh's testimony indicates that he is especially qualified to judge Mr. Gillis' mental and physical characteristics. See Testimony page 6 noting that Dr. Singh is aware of Mr.

Gillis' personal, social and medical history; page 8, noting that Dr. Singh has had reason to consider Mr. Gillis' mental condition; pages 9, 25 noting that Dr. Singh has conducted examinations which would have revealed mental deficiencies; pages 12, 17, 22-26, noting that Dr. Singh has had experience in neurology.

Dr. Singh indicated that Mr. Gillis is ambulatory, and well able to care for himself. Mentally, Dr. Singh has found Mr. Gillis to be very stable, and of very good memory for a person his age. Dr. Singh indicated that he had never known Mr. Gillis to be disoriented or suffering from any mental deficiency. Specifically, Dr. Singh affirmed that Mr. Gillis is not suffering from cerebrovascular insufficiency or senile dementia which would affect his memory and/or judgment; and, that he is "absolutely mentally competent to take care of his affairs."

Dr. Singh was shown a copy of the conclusion reached by Dr. David Lucid of Michigan, the doctor whose opinion apparently led to the Michigan court's incompetency proceedings. Apparently, Dr. Lucid found Mr. Gillis to have been suffering from chronic brain syndrome in April of 1980. Dr. Singh strongly refuted this. He noted that "chronic brain syndrome" depicts a condition which does not disappear, and that Mr. Gillis presently shows no indication of any such disease. He explained that Mr. Gillis' apparent mental deficiency in April of 1980 could have been due to an acute illness. Dr. Singh did not examine Mr. Gillis between June of 1979 and September of 1980, and thus, he could not be aware of his appearance or mental condition in April of 1980, when Dr. Lucid reached his conclusions.

In opposition to Mr. Gillis' petition, respondent,

Mrs. Anna Gapshes, and Bernadine Patrick, Mr. Gillis' niece, testified. It should be noted that their testimony dealt almost entirely with what Mr. Gillis did in the past. It is his mental condition now, not then which is controlling. Neither of these witnesses provided any indication that Mr. Gillis is now incompetent, or that he has demonstrated any behavior which would suggest incompetency. It appears as if Ms. Patrick's and Mrs. Gapshes concern over Mr. Gillis' mental health was prompted by Mr. Gillis' sending of a large amount of money to a friend in Tennessee for the purchase of a motor home. Mr. Gillis explained, however, that although he could not drive, a driver could have been obtained, and that he could have been able to make use of the motor home.

Respondent also offered the April 22, 1982 deposition of Dr. David Lucid, the physician who attended Mr. Gillis while he was in Michigan. Dr. Lucid first saw Mr. Gillis in December of 1979, at a time when Mr. Gillis was having trouble with his right ankle and leg, and complaining of shortness of breath. Dr. Lucid's conclusion that Mr. Gillis suffered from "chronic brain syndrome" was based on certain tests which he performed on Mr. Gillis, particularly an Electroencephalogram, EEG. Dr. Lucid prescribed medication for this condition. As noted earlier, however, Dr. Lucid did not see "chronic brain syndrome" as necessarily permanent, if for example, it was caused by a brain tumor. As for Dr. Lucid's use of an EEG to diagnose chronic brain syndrome, Dr. Singh clearly indicated that, in his opinion, such a test was of little or no use for diagnosing chronic brain syndrome and/or cerebrovascular insufficiencies. Testimony deposition of Dr. Singh, pages 17, 24. Dr. Lucid conceded that an EEG does not always prove that there is a defi-

ciency in the thinking process. Testimony deposition of Dr. Lucid, page 15. Most importantly, Dr. Lucid has not seen Mr. Gillis since July 8, 1980, over one and a half years ago. Hence his opinions are of little help in determining Mr. Gillis' present competency.

There was thus no evidence from respondent to show that Mr. Gillis is incompetent, and clear indication from Dr. Singh, Mrs. Vedder and Mr. Gillis that he is competent. Most importantly, regardless of Mr. Gillis' mental condition when the Michigan court found him incompetent, he is now, over a year and a half later, competent to handle his own financial affairs.

Wherefore, the court makes the following

## DECREE

And now, July 1, 1982 it is decreed that Anthony M. Gillis is competent to manage his own property, and his own affairs, financial and/or otherwise. Specifically, Anthony M. Gillis is competent to manage those assets presently under the control of the successor trustee appointed by order of the Probate Court for the County of Wayne, State of Michigan, File no. 715, 655, dated November 16, 1981, Willis F. Ward, Probate Court Judge.