378 A.2d 307

**In re Estate of Harold L. GARGES, Deceased.**

**Appeal of Mildred K. GARGES (at No. 247).**

**Appeal of Elizabeth WISMER (at No. 211).**

Supreme Court of Pennsylvania.

Argued Jan. 21, 1977.

Decided Oct. 7, 1977.

238

Jerome B. Nulty, Souderton, J. Brooke Aker, Norristown, for appellant at No. 211 and appellee at No. 247.

John J. Rufe, Alton G. Grube, R. A. Lechowicz, Sellersville, for appellant at No. 247 and appellee at No. 211.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from a decree of the Orphans' Court Division of Bucks County.[1] The only question before us is whether the Auditing Judge was justified in deciding appellee Mildred K. Moyer, also known as Mildred Garges, was the common law wife of decedent Harold L. Garges, and thus is entitled to share in his intestate estate. We conclude the orphans' court decision is supported by the record and therefore affirm.[2]

### I.

Decedent Harold L. Garges was the husband of Elizabeth Moyer Garges. They had a daughter, appellant Elizabeth

1. We have jurisdiction of this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1977).

2. In a separate appeal from the decree of the orphans' court, No. 247, Mildred K. Moyer asserts that Elizabeth Wismer should be estopped from denying that Ms. Moyer was the common law wife of Mr. Garges. Because this is merely a ground for affirming the decree of the orphans' court and not for granting additional relief in the decree, Ms. Moyer should not have presented this question by prosecuting a separate appeal. It is an argument for sustaining the decree attacked by appellant Elizabeth Wismer in No. 211. In view of our disposition of the issue presented in No. 211, we need not decide the estoppel question.

Wismer, in 1938. Beginning in 1944, decedent cohabited with appellee Mildred K. Moyer. The court found that this cohabitation lasted until Mr. Garges' death in 1968.[3]

On May 8, 1962, Mr. Garges and Elizabeth Moyer Garges were divorced. The court found that shortly after the divorce Mr. Garges showed his copy of the divorce decree to Mildred K. Moyer. He told her, "Now we're legally married," and she replied, "It's about time. That's just what we were waiting for."[4] Afterwards, Ms. Moyer began to wear a wedding ring decedent had given her long before his divorce. In 1963, Ms. Moyer, using the name Mildred K. Garges, and Mr. Garges took out life insurance policies naming each other as spouse-beneficiaries. The Auditing Judge also found that decedent and Ms. Moyer had the reputation in their community as being married at common law both before and after decedent's divorce in 1962.

## II.

In Pennsylvania, marriage is a civil contract made between parties with the capacity so to contract.[5] E. g., *Gower Estate*, 445 Pa. 554, 284 A.2d 742 (1972) (agreement of marriage by itself proved common law marriage); *Rosenberger Estate*, 362 Pa. 153, 157, 65 A.2d 377, 379 (1949). Proving the existence of a marriage contract, except where

3. Appellant presented evidence that this cohabitation ended as early as 1965. The record would support either conclusion. We will not disturb the finding that was made. *Kay v. Kay*, 460 Pa. 680, 334 A.2d 585 (1975).

4. This is Mildred K. Moyer's version of the conversation. Raymond K. Moll, a customer of decedent's business who lived in the neighborhood and who overheard the conversation, told a similar story in slightly different words.

5. Of course it is a contract of a peculiar nature. It is an agreement not so much to do certain things as to place oneself in a legal relationship to another, a relationship which can be dissolved only by the state; the contract cannot be rescinded by agreement of the parties. It also has special capacity rules. For example one whose previous marriage has not been dissolved is incapable of contracting to marry another. *Rosenberger Estate*, 362 Pa. 153, 65 A.2d 377 (1949) (man could not enter common law marriage while he had an undivorced common law wife).

it is entered into ceremonially, is difficult, because it is likely to arise in an informal setting, where records are not kept. Therefore, the courts of this Commonwealth have developed certain rules and presumptions to aid them in determining whether a marriage contract has been entered. Appellant asserts that when these rules and presumptions are properly applied, the evidence is insufficient to prove a common law marriage between decedent and appellee Mildred K. Moyer.

■ Cohabitation of a man and a woman, both of whom are capable of contracting marriage, and a reputation as husband and wife in their community together raise a presumption that the parties have contracted marriage. E. g., *Thorndell v. Morrison*, 25 Pa. 326 (1855); *Commonwealth v. Stump*, 53 Pa. 132, 135 (1866); *Pierce v. Pierce*, 355 Pa. 175, 179, 49 A.2d 346, 348 (1949). Where, however, the relationship between the parties began while at least one party was married to a third person, the courts will presume that the parties continued to live together unmarried even after the impediment to their marriage had been removed. Clear and convincing evidence of a change of status is required to rebut this presumption. E. g., *Pierce v. Pierce*, supra.

In this instance, the Auditing Judge recognized that the cohabitation of Harold L. Garges and Mildred K. Moyer began while Mr. Garges was still married, and required "unequivocal" proof of a change of status. In particular, the court found that the conversation quoted above, in which Mr. Garges and Ms. Moyer agreed they were now legally married had in fact taken place.

■ A marriage contract does not require any specific form of words. In particular, words of taking or explicit performative utterances,[6] such as "I take you to be my wife" or "I hereby marry you" are unnecessary. All that is essential is proof of an agreement to enter into the legal

6. The term "performative utterance" was coined by J. L. Austin, English philosopher of the midtwentieth century.

relationship of marriage at the present time.[7] For example, in *Rosenberger Estate*, 362 Pa. at 155, 65 A.2d at 379, a marriage contract was found where the man gave the woman a ring and said, "Now you have the ring and you are my wife," whereupon she replied, "That is fine. I love it." These words are in form mere statements by the man that a condition of marriage exists and by the woman of pleasure with that fact, but in their context the words indicated an agreement to marry.

■ Here, the trier of fact had adequate reason to find the exchange between decedent and appellee to be an agreement to marry. As in *Rosenberger*, the utterances take the form of statements but evidence agreement to be married. The court could properly infer from the statements and the surrounding circumstances an agreement to alter the former relationship of decedent and appellee—that is, to become married now that decedent's former marriage had been dissolved.

■ The court also relied on corroborating evidence that decedent and appellee agreed to be married. They continued cohabiting after the quoted exchange, and their reputation as husband and wife was unchanged.[8] They took out the life insurance policies, each designating the other as

7. The alleged agreement may not be a mere admission that a prior relationship entered into while one of the parties is married still exists. E. g., *Hantz v. Sealy*, 6 Binney 405 (Pa.1814); *Manfredi Estate*, 399 Pa. 285, 291–92, 159 A.2d 697, 700 (1960) (dictum).
   Recent cases state that an agreement to be married in the future does not establish a contract of marriage. E. g., *Manfredi Estate*, supra (dictum); *Pierce v. Pierce*, 355 Pa. 175, 49 A.2d 346 (1946) (alternative holding). But see *Richard v. Brehm*, 73 Pa. 140, 141–42, 144 (1873).

8. While post-1962 cohabitation and reputation cannot by themselves establish a marriage here because of the presumption that the appellee and decedent continued their prior unmarried relationship, these facts can corroborate other evidence of an agreement to marry entered into after both parties became competent to marry. *Stauffer Estate*, 372 Pa. 537, 94 A.2d 726 (1953). Once evidence of what may be a marriage contract is presented, evidence that the parties acted in a manner consistent with such an agreement, and that the community believed such an agreement existed, is relevant to the issue whether the contract actually existed.

spouse, and Ms. Moyer began to wear the ring decedent had given her.

The evidence was sufficient to prove a marriage contract. Conflicting evidence was presented but the resolution of these conflicts was for the trier of fact. *Kay v. Kay*, 460 Pa. 680, 334 A.2d 585 (1975). We find no basis for disturbing his determination.

Decree affirmed. Each party pay own costs.

JONES, C. J., did not participate in the consideration or decision of this case.

NIX, J., did not participate in the consideration or decision of this case.