Edward F. CHARMACK, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

No. 01–3278.

United States Court of Appeals, Federal Circuit.

Nov. 9, 2001.

Before LOURIE, CLEVENGER, and GAJARSA, Circuit Judges.

PER CURIAM.

Edward F. Charmack seeks review of the final decision of the Merit Systems Protection Board ("Board") affirming the reconsideration decision of the Office of Personnel Management ("OPM"), which denied his application for widower's death benefits pursuant to the Federal Employee Retirement System ("FERS"). *Charmack v. Office of Pers. Mgmt.*, No. SF0843000067–I–1, 2001 WL 548589 (April 25, 2001). For the reasons set forth below, we *vacate* the final decision of the Board and *remand* the case for further proceedings as directed herein.

I

Under the provisions of FERS applicable to the facts of this case, Mr. Charmack would be entitled to widower's death benefits on account of the death of his wife Tara (who was employed by the Immigration and Naturalization Service of the Department of Justice from October 1, 1995, until her death on February 18, 1999) if he can prove that he was married to Tara for at least nine months immediately before her death. *See* 5 U.S.C. § 8441(2) (2000). Mr. Charmack and Tara made their home in Arizona, and Arizona law determines whether they were married for at least nine months before February 18, 1999.

For more than ten years before Tara's death, the couple lived together as common-law husband and wife in Arizona, a state that does not itself recognize common-law marriages. In November of 1998, the couple was married before a judge in a civil ceremony in Arizona and then became a married couple in the eyes of Arizona law. The duration of their official Arizona marriage, however, was less than the nine months required to entitle Mr. Charmack to FERS widower's benefits. Although Arizona does not authorize common-law marriages, it does recognize common-law marriages that are valid in another state. *See* Ariz.Rev.Stat. § 25–112 (1999).

Mr. Charmack and Tara spent approximately a month in Pennsylvania in May and June of 1992. Common-law marriages are recognized as valid in that state. Marriage in that state is viewed as a civil contract between parties with the capacity to contract. It is undisputed that Mr. Charmack and Tara had the capacity to contract. Pennsylvania law provides guides to determine if a common-law marriage has been consummated in that state. The utterance of *verba de praesenti*, or words in the present tense uttered for the purpose of establishing the relationship of husband and wife, will suffice to establish a common-law marriage in Pennsylvania. *See In re Garges' Estate*, 474 Pa. 237, 378 A.2d 307, 308–09 (1977). Mr. Charmack candidly concedes that such words were not uttered during the time he and Tara were in Pennsylvania.

Pennsylvania law also creates a rebuttable presumption of common-law marriage, absent *verba de praesenti*, where two elements are present: (1) constant cohabitation between a man and woman each with the capacity to marry, and (2)

general reputation as husband and wife in their community (in this case, in Pennsylvania).

■ For purposes of FERS law, the nine-month marriage requirement can be met by combining times of marriages. *See* 5 C.F.R. § 843.303(3)(b) (2001). A common-law marriage and a subsequent ceremonial one may be combined for the purpose of meeting the nine-month requirement. *See Goldbach v. Office of Pers. Mgmt.*, 42 M.S.P.R. 57, 59–60 (1989). Thus, if Mr. Charmack can prove that he and Tara consummated a common-law marriage in Pennsylvania in 1992, the length of the common-law marriage alone, or when coupled with the Arizona marriage, would satisfy the nine-month requirement. Only the nine-month requirement stands in the way of Mr. Charmack's entitlement to widower's benefits under FERS.

## II

OPM denied Mr. Charmack's application for widower's benefits on the ground that he had failed to show that he had been married to Tara for the required nine months. From the record before us, it is unclear whether OPM considered the possibility that a Pennsylvania common-law marriage had been consummated in 1992, but that omission is of no consequence. On Mr. Charmack's appeal to the Board, the Board notified Mr. Charmack that he could satisfy the nine-month requirement if he could show, in addition to the brief Arizona marriage, a common-law marriage in a state that authorizes such marriages, with the two marriages together satisfying the time requirement. The Board, upon learning that Mr. Charmack had spent time in Pennsylvania with Tara, and recognizing that Pennsylvania respects common-law marriages, explained the guides in Pennsylvania law for establishing a com-

mon-law marriage, and afforded Mr. Charmack an opportunity to show that he satisfied those guides.

Mr. Charmack did not assert that he could prevail with *verba de praesenti*. In this respect, Mr. Charmack is to be commended. He was aware of the fact that in a similar Board case, the Board had accepted the unsubstantiated word of the benefits applicant, Patricia Halpern, that she and her deceased male companion (a Chief Administrative Law Judge with the Social Security Administration) had uttered *verba de praesenti* in Pennsylvania. According to the Board's decision in the *Halpern* case, the self-serving assertion of utterance of *verba de praesenti* "[w]ithout more ... would be sufficient evidence from which to conclude that a common-law marriage was formed on that date." *Halpern v. Office of Pers. Mgmt.*, No. SF03197047–I–1 (July 7, 1997). Given the opportunity to deliver self-serving testimony himself on a dispositive issue, Mr. Charmack told the truth and in so doing left himself with the task of proving a presumptive common-law marriage. In that regard, he asserted that he and Tara had cohabited in Pennsylvania, and his assertion is sufficient to invoke the presumption under Pennsylvania law. As to whether he and Tara had the general reputation in Pennsylvania as husband and wife, Mr. Charmack submitted affidavits of one of his sons and his daughter. Neither lived in Pennsylvania nor apparently visited there during the months that Mr. Charmack and Tara were there. Nonetheless, each asserted that they understood Mr. Charmack and Tara to be husband and wife. Absent other evidence tending to prove whether the couple had the general reputation in Pennsylvania as husband and wife, the Board concluded that Mr. Charmack had failed to establish that point. Without proof of the general reputation as

husband and wife, Mr. Charmack was not entitled to a presumptive common-law marriage under the law of Pennsylvania. Thus without proof of a marriage of more than nine months before Tara's death, the Board felt compelled under the law to affirm the reconsideration decision of OPM.

## III

Mr. Charmack timely petitioned for review in this court. We may upset the final decision of the Board only if we have reason to conclude that it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with substantive or procedural law, or lacking in substantial evidence to support facts found by the Board. 5 U.S.C. § 7703(c) (2001).

■ Upon our review of the record before us, we discern a need for further procedure in this case, without which we would have concerns about the fairness of the Board's conclusion in this case.

The record reflects that the time spent in Pennsylvania by Mr. Charmack and Tara was for the purpose of introducing her to Mr. Charmack's family as his wife. During that time, Mr. Charmack and Tara visited Mr. Charmack's son Robert at his home. Due to space limitations, the couple resided in their motor home, rather than stay in Robert's house. Robert, unlike Mr. Charmack's other children who were not in Pennsylvania, is in a position to explain the circumstances of the visit of Mr. Charmack and Tara to Pennsylvania, including knowledge of others who would have seen the couple and of whether a general reputation of marriage was being exuded by the couple. Robert's testimony is thus important to determine whether a common-law marriage was presumptively consummated in Pennsylvania.

The problem is that Robert has refused to participate in the Board's proceedings, which of course are directed to establishing the truth on whether a common-law marriage existed. Mr. Charmack did not appreciate the need for testimony from Robert until the Board had rejected the evidence supplied by his other children on the point of general reputation. It is now clear that without Robert's participation in the compilation of a complete factual record, justice may not be served in this case.

As we have noted elsewhere, "[w]e do not second-guess the trial tribunal on procedures except where the abuse of discretion is clear and harmful or where exceptional circumstances are present which fall within the terms of section 7703(c)." *Spezzaferro v. FAA*, 807 F.2d 169, 173 (Fed. Cir.1986). Here, we discern no previous abuse of discretion by the Board, but we perceive exceptional circumstances that warrant vacating of the Board's final decision and reopening the record in Mr. Charmack's case to afford the opportunity for further testimony.

The Board is amply armed with authority to compel testimony, when the needs of justice so require. *See* 5 U.S.C. § 1204(b)(2)(A) (2000) (authorizing issuance of subpoenas to compel testimony); 5 C.F.R. § 1201.81 (2001) (providing for parties to request issuance of subpoenas). In the event that the Board authorizes issuance of a subpoena and the recipient refuses to comply, contumacy or failure to comply may be punished by a United States District Court as contempt of court. *See* 5 U.S.C. § 1204(c) (2000).

We hesitate at this time to order the Board in this case, on remand, to issue a subpoena compelling the testimony of Robert Charmack. Instead, we think the circumstances require us to vacate the Board's final decision and to remand the case to the Board to afford Mr. Charmack

the opportunity to request the Board to issue a subpoena to compel testimony from Robert Charmack. The Board's regulations concerning requests for subpoenas, including the required form for such requests and the manner of serving subpoenas, are set forth in sections 1201.81–85 of the Code of Federal Regulations.

The final decision of the Board in this case is vacated, and the case is remanded for further proceedings consistent with this ruling. In due course, the Board will enter a final decision in this case that will be subject to review in this court.