DECISION
 

 JOYNER, District Judge.
 

 This interpleader action has been brought before this Court under the Employee Retirement Income Security Act (“ERISA”), 29 U.S.C. § 1132(a), for determination of which Defendant is entitled to the death benefits payable by Plaintiff International Painters and Allied Trades Pension Fund.
 
 [1]
 
 Following a non-jury trial in this matter on March 18, 2004, we make the following:
 

 Findings of Fact
 

 1. Plaintiffs are International Painters and Allied Trades Pension Fund (“Fund”) and Gary Meyers. Plaintiff Fund is a trust fund established under 29 U.S.C. § 186(c)(5) and a “multiemployer plan” and “employee benefit plan” within the meaning of 29 U.S.C. § 1002(37),(1),(2) and (3). The Fund is administered from offices located in Washington, D.C. Plaintiff Gary Meyers is an individual fiduciary of the Funds within the meaning of 29 U.S.C. § 1002(21) and is authorized to represent the full Board of Trustees of the Fund in this action.
 

 2. Victor M. Calabro was a participant in the Pension Fund. He died on May 26, 2001 and death benefits are payable from the Fund by reason of his death.
 

 3. The International Painters & Allied Trades Industry Pension Plan contains the following provisions:
 

 3.18(a)Death Benefit
 

 (a)
 
 General
 
 Rule
 

 Except as provided in Section 3.20(b), in the event the Participant died before
 
 *DCCXLII
 
 pension benefits became effective and after he or she had accrued 60 units of pension credit during the Contribution Period but before he or she was eligible for a pension either through vesting or by reduced eligibility rules, a Death Benefit equal to 50% of the contributions made on the Participant’s behalf shall be paid to his or her designated Beneficiary. However, if the Beneficiary under this Section is the Participant’s surviving spouse who is entitled to a Preretirement Surviving Spouse Pension under Section 5.03, no Death Benefits shall be payable under this Section unless the surviving spouse so elects in accordance with Section 5.03(g)(3). Also, no benefits shall be payable under this Section if a Husband-and-Wife Pension is payable to the Spouse of the Participant under Section 5.02.
 

 5.03(g)(3) Pre-retirement Surviving Spouse Pension
 

 (a) If a Participant who has a Qualified Spouse dies before the Annuity Starting Date but at a time when the Participant had earned a vested right to a pension, a Pre-Retirement Surviving Spouse Pension shall be paid to the surviving Spouse.
 

 (b) A Spouse is a Qualified Spouse for the purpose of this subsection if the Participant and Spouse have been married to each other throughout the year immediately before the Participant’s death, or if the couple were divorced after being married for at least one year and the former spouse is required to be treated as a Spouse or Surviving Spouse under a Qualified Domestic Relations Order as defined in ERISA § 206(d)(3) and IRC 414(p).
 

 7.13
 

 If no designated Beneficiary survives at the death of a Participant, any Death Benefit provided shall be payable to the estate of the Participant subject to the terms of the third paragraph of this Section.
 

 1.04
 

 The term “Beneficiary” means a person (other than a Pensioner) who is receiving, or who is entitled to receive, benefits under this Plan because of his or her designation for such benefits by a Pensioner or a Participant.
 

 4. Victor Calabro did not submit a Beneficiary Designation Form to the Fund prior to his death.
 
 [2]
 

 5. Defendant Theresa Calabro is the daughter of Victor Calabro and adminis-tratrix of his estate. She believes she is entitled, as administratrix of Victor Calab-ro’s estate, to the death benefits payable by the Fund.
 

 6. Defendant Dorothy Busha believes she was the common law wife of Victor Calabro at the time of his death and is therefore entitled to the death benefits payable by the Fund.
 

 7. Dorothy Busha and Victor Calabro met each other and started a relationship in 1966. Victor began living with Dorothy sometime in 1966 and they continued to live together until sometime around 1990.
 
 *DCCXLIII
 
 Victor and Dorothy applied for and received a loan together in 1986, held a joint bank account together until at least 1986, and purchased insurance policies together. Dorothy was identified as “Dorothy Calab-ro” on the loan documents, bank account, insurance policies, and vehicle registrations. In 1986, Victor designated Dorothy Busha as the beneficiary on his life insurance policy and identified her as his common law wife. Dorothy’s grandchildren knew Victor as their grandfather and Dorothy’s husband.
 

 8. Victor was married to Mary Calabro at the time he moved into Dorothy’s residence in 1966. A divorce decree was issued as to Victor and Mary Calabro on November 14,1975.
 

 9. Dorothy was married to Bernice Bu-sha at the time she and Victor began living together in 1966. A divorce decree was issued as to Dorothy and Bernice Busha on April 14,1977.
 

 10. On December 24, 1969, Victor gave Dorothy a ring and asked her to marry him when both of their divorces were final.
 

 11. On January 8, 1977, Dorothy’s sister got married in a wedding ceremony held in Victor and Dorothy’s home. During the exchange of vows, Dorothy and Victor also repeated the vows loud enough that others present could hear them.
 

 12. Sometime around 1990, Dorothy Calabro moved out of the home she shared with Victor due to an incident that occurred between Victor and Dorothy’s daughter. Though they lived separate and apart, Dorothy and Victor continued to have liaisons together. Up until his death, Victor continued to send holiday cards to Dorothy in which he referred to himself as her husband.
 

 13. Upon Dorothy and Victor’s separation, Elizabeth Terranova and Victor started living together. Elizabeth and Victor lived together until the time he died, with the exception of a period of approximately one year sometime around 2001 in which Victor lived with his daughter Theresa.
 

 14. Elizabeth Terranova also believes she was the common law wife of Victor Calabro at the time of his death. Victor gave Elizabeth holiday cards similar to those he gave to Dorothy, and signed those cards as Elizabeth’s husband. On October 5, 1998, Victor transferred the deed to his home to himself and Elizabeth an joint tenants with rights of survivorship. In 1998, Victor identified Elizabeth as his “spouse” on two affidavits of gifts filed with the Department of Transportation, and identified her as his common law wife on a medical life insurance enrollment card.
 

 15. Victor Calabro signed a document titled “LAST WILL AND TESTAMENT OF VICTOR M. CALABRO” on July 31, 1995 in which he recognized Dorothy as his “common-law wife for 21 years.” This Will was not probated but was returned to Dorothy by the Register of Wills of Philadelphia without explanation.
 

 16. Victor Calabro is designated as “Divorced” on his Death Certificate.
 

 17. On July 2, 2001, a check was issued to Dorothy Calabro, in reference to ‘Victor M. Calabro,” in the amount of $2500 from the Death Benefit Fund of International Union of Trade Painters and Allied Trades.
 

 Discussion
 

 This suit arises under 29 U.S.C. § 1132(a)(3), which provides that “a participant, beneficiary,
 
 or fiduciary,
 
 [may bring a civil action] (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this sub-
 
 *DCCXLIV
 
 chapter or the terms of the plan.” 29 U.S.C. § 1132(a)(3) (emphasis added). Plaintiffs Pension Fund and Gary Meyers, fiduciary of the Funds, filed this action for equitable relief to enforce the terms of the plan at issue.
 
 See U.S. Fire Ins. Co. v. Asbestospray Inc.,
 
 182 F.3d 201, 208 (3d Cir.1999) (describing interpleader as equitable proceeding). Because this action arises under federal law, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.
 

 On the death of Victor Calabro, the Pension Fund’s plan of benefits provides for the payment of death benefits to a spouse or beneficiary. A Pre-Retirement Surviving Spouse Pension is payable in the form of an annuity to the surviving spouse. A lump sum payment is payable to the designated beneficiary or estate of a participant who was not married at his date of death. Plaintiffs filed this interpleader action for a determination of whether the death benefits payable under the Plan must be paid to Defendant Dorothy Busha, as a “surviving spouse” within the meaning of the Plan, or to Defendant Theresa Calabro, as administratrix of Victor Calabro’s estate. Therefore, the issue we must decide is whether Defendant Dorothy Busha and Victor Calabro ever entered into a valid marriage.
 

 Marriage in Pennsylvania is a civil contract by which man and woman take each other for husband and wife.
 
 Staudenmayer v. Staudenmayer,
 
 552 Pa. 253, 714 A.2d 1016, 1019 (1998) (citing
 
 In re Estate of Manfredi,
 
 399 Pa. 285, 291, 159 A.2d 697, 700 (1960)). One whose previous marriage has not been dissolved is incapable of contracting to marry another.
 
 In Re Estate of Garges,
 
 474 Pa. 237, 378 A.2d 307, 308 n. 5 (1977). At all times relevant to this case, Pennsylvania law recognized two kinds of marriage: (1) ceremonial; and (2) common law.
 
 [3]
 

 Staudenmayer,
 
 714 A.2d at 1019. At issue here is the doctrine of common law marriage. A common law marriage is created by the exchange of
 
 verba in praesenti
 
 the “exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created.”
 
 Id.
 
 at 1020. The party alleging a common law marriage has the “heavy” burden of proving its existence.
 
 Estate of Gavula,
 
 490 Pa. 535, 540, 417 A.2d 168, 171 (1980). He or she must produce clear and convincing evidence of the exchange of
 
 ver-ba in praesenti. Staudenmayer,
 
 714 A.2d at 1021.
 

 Proof of constant cohabitation and a general reputation of marriage can raise a rebuttable presumption of marriage in some instances.
 
 See Estate of Manfredi,
 
 159 A.2d at 700. However, this presumption is not applicable where, as here, the putative spouse is able to testify regarding the establishment of the marriage contract through the exchange of
 
 verba in praesen-ti. Staudenmayer,
 
 714 A.2d at 1021.
 

 From the inception of their relationship in 1966, through April 14, 1977, the date of Dorothy’s divorce decree, Victor and Dorothy could not enter into either a common law or a traditional marriage. As such, the vows they exchanged during Dorothy’s sister’s wedding on January 8, 1977, did not create a valid common law marriage. Likewise, Victor’s marriage proposal to Dorothy on Christmas eve of 1969 was insufficient to create a common law marriage. Not only were both Dorothy and Victor married to other persons at that time, Victor did not use
 
 verba in praesenti,
 
 rather, he asked Dorothy to marry him at some future time.
 

 
 *DCCXLV
 
 Dorothy has not produced any evidence of
 
 verba in praesenti
 
 after April 14, 1977, the date upon which she was capable of contracting to marry. The testimony presented by Dorothy indicates that she and Victor lived together continuously until sometime in 1990. There was also some evidence of a general reputation of marriage between Dorothy and Victor. However, evidence of cohabitation and general reputation of marriage is not sufficient to establish a common law marriage where the putative spouse is able to testify and fails to prove by clear and convincing evidence, the establishment of the marriage contract through the exchange of
 
 verba in praesenti. See Staudenmayer,
 
 714 A.2d at 1021. Furthermore, the presumption of marriage based on cohabitation and reputation does not apply if the parties’ relationship began while at least one party was married to a third person.
 
 In Re Garges,
 
 378 A.2d at 309. In this instance, the court will presume that the parties continued to live together unmarried even after the impediment to marriage has been removed, unless there is clear and convincing evidence of a change of status — from “unmarried” to “married.”
 
 [4]
 

 Id.
 
 Dorothy has failed to meet this burden. She has provided no evidence that she and Victor changed their status as a couple from unmarried to married after her divorce. Therefore, Dorothy Busha has failed to establish the existence of a valid common law marriage between herself and Victor Calabro that would entitle her, as his “surviving spouse,” to the death benefits payable under the Plan.
 

 Conclusions of Law
 

 1. This Court has jurisdiction over this ease pursuant to 29 U.S.C. § 1132(a)(3) and 28 U.S.C. § 1331.
 

 2. Defendant Dorothy Busha never entered a valid common law marriage with Victor Calabro.
 

 3. Defendant Dorothy Calabro is not the “Surviving Qualified Spouse” of Victor Calabro within the meaning of the Pension Plan.
 

 4. Defendant Dorothy Calabro is not entitled to any death benefits payable by the Pension Fund by virtue of Victor Cal-abro’s death.
 

 5. Theresa Calabro, as administratrix of Victor Calabro’s estate, is entitled to the death benefits payable by the Pension Fund by virtue of Victor Calabro’s death.
 

 An order follows.
 

 ORDER
 

 AND NOW, this 30th day of March 2004, following a non-jury trial and for the reasons set forth in the preceding Decision, Plaintiff is hereby ORDERED to pay to Defendant Theresa Calabro, administra-trix of Victor M. Calabro’s estate, the death benefits owed and payable by the Plaintiff as a result of the death of Victor M. Calabro.
 

 [1]
 

 . Plaintiffs attempted to bring this suit pursuant to the Federal Interpleader Act, 28 U.S.C. §§ 1335, 1397 and 2361. In pertinent part, the Federal Interpleader Act reads as follows:
 

 (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more ... if (1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation...
 

 28 U.S.C. § 1335(a).
 

 By way of answer to Plaintiff's complaint, Defendant Theresa Calabro averred that she resides at 2727 Rhawn Street, Apartment 32B, Philadelphia, Pennsylvania. Defendant Dorothy Busha, by way of answer to Plaintiff's Complaint, averred that she resides at 1413 E. Lycoming Avenue, Philadelphia, Pennsylvania. As such, the two adverse claimants in this action are not of diverse citizenship as required for this Court's jurisdiction under 28 U.S.C. § 1335. As will be discussed
 
 infra,
 
 this Court's subject matter jurisdiction is proper on another basis and we will therefore treat this interpleader action as one under Rule 22 of the Federal Rules of Civil Procedure.
 

 [2]
 

 . The Court makes this finding even though there was no evidence presented as to whether or not Victor designated a beneficiary. Plaintiffs averred in their Complaint that Victor did not submit the Beneficiary Designation Form. Defendant Theresa Calabro admitted this fact, but Defendant Dorothy Busha denied its veracity and alleged that such a form was in the possession of the Plaintiffs. Neither side presented any testimony or evidence regarding this matter at trial, and Dorothy Busha, the only party contesting the issue, proceeded on the theory that she was entitled to the death benefits by virtue of being Victor's common law wife, and not as the designated beneficiary of the fund.
 

 [3]
 

 . The doctrine of common law marriage has apparently since been abolished in Pennsylvania.
 
 See PNC Bank Corp. v. Workers' Compensation Appeal Board (Stamos),
 
 831 A.2d 1269, 1282 (Pa.Cmwlth.2003).
 

 [4]
 

 . An otherwise valid marriage can be cured under 23 Pa.C.S. § 1702(a) after the impediment to marriage is removed, only if the marriage is entered into in good faith without knowledge of the impediment. 23 Pa.C.S. § 1702(a) (1990);
 
 Dowd v. Dowd,
 
 275 Pa.Super. 472, 418 A.2d 1387 (1980). Dorothy Busha has not alleged, nor do we believe that she could do so in good faith, that she and Victor recited marriage vows on January 8, 1977 in good faith and without knowledge that Dorothy was still married at that time to another man.