J-A02025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| DANIELLE JOY EGGLESTON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH ALLEN EGGLESTON | : | No. 704 WDA 2024 |

Appeal from the Order Entered May 17, 2024
In the Court of Common Pleas of Warren County Domestic Relations at
No(s):  DRS 23-00157,
PACSES 854302508

| DANIELLE JOY EGGLESTON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH ALLEN EGGLESTON | : | No. 706 WDA 2024 |

Appeal from the Order Entered May 17, 2024
In the Court of Common Pleas of Warren County Civil Division at No(s):
2023-00539

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.:  **FILED: March 14, 2025**

Danielle Joy Eggleston (Wife) appeals from the order granting Keith Allen Eggleston's (Husband) petition for a judgment declaring the parties' marriage invalid, and sustaining Husband's preliminary objections (POs) to Wife's complaint for alimony *pendente lite* (APL).  Wife challenges the trial court's declaration that the parties were never legally married, and thus, that

Wife's divorce and APL actions cannot proceed. After careful review, we reverse and remand for further proceedings.

On December 27, 2023, Wife filed a complaint in divorce against Husband, docketed at No. 2023-00539 (divorce action). Wife sought dissolution of the parties' marriage, claiming it was irretrievably broken, and equitable distribution of marital property. **See generally** Complaint, 12/27/23; **see also** 23 Pa.C.S.A. § 3301(d). In the complaint, Wife asserted the parties were married "on August 20, 2017." Complaint, 12/27/23, ¶ 4. Separately, on December 19, 2023, Wife filed a complaint for APL against Husband in the domestic relations division, docketed at No. 23-00157 (APL action), claiming the parties married on August 20, 2017, in Warren, Warren County, Pennsylvania. Complaint, 12/19/23, ¶ 3(a).

On March 14, 2024, Husband filed POs, at both dockets, asserting the invalidity of the parties' marriage. POs, 3/14/24, ¶ 5 (arguing that Wife "cannot recover," in either the divorce action or APL action, "as the parties are not legally married."). On the same date, Husband filed a motion in the divorce action for a declaratory judgment that the parties never legally married,[1] asserting as follows:

---

[1] Section 3306 of the Domestic Relations Code provides that when a party to a marriage denies its validity, the party "may bring an action for declaratory judgment seeking a declaration of the … invalidity of the marriage[.]" 23 Pa.C.S.A. § 3306; **see also Asumana v. Asumana**, 318 A.3d 950, 952 n.2 (Pa. Super. 2024) (citing Section 3306).

- 2 -

The Warren County Register of Wills and Recorder of Deeds office has on file, at Document Number 2017-45993, a duplicate marriage license certificate [(duplicate certificate)] purporting to certify that [Wife] and [Husband] were married by David Young [(Young), Wife's brother and an ordained officiant,[2]] on the 20th day of August, 2017, in Corry, Erie County, Pennsylvania. … The parties were not physically present in Corry … on August 20, 2017. [Wife] and [Husband], along with [] Young, were travelling to and/or physically present in the Dominican Republic on August 20, 2017. As the parties and the officiant, [] Young, were not physically present in … Corry, Pennsylvania, or Erie County, Pennsylvania, at the time that the duplicate … certificate purports to have them united in marriage, the parties were never legally married.

Motion for Declaratory Judgment, 3/14/24, ¶¶ 3-6 (footnote added; formatting and punctuation modified).

Wife filed an answer to Husband's motion for declaratory judgment on April 1, 2024, claiming "the parties entered into a valid and binding marriage on August 20, 2017[,] to which [Husband] never objected prior to institution of divorce proceedings." Answer, 4/1/24, ¶ 2. The trial court scheduled the matter for a hearing (evidentiary hearing) on May 2, 2024.

At the evidentiary hearing, the trial court admitted a copy of the duplicate certificate, which was appended to the parties' marriage record filed with the Pennsylvania Department of Health – Vital Records Office (DOH –

_____

[2] Although, in the trial court, Husband challenged Young's legal authority to solemnize marriages, Husband abandons this challenge on appeal. *See* Motion for Declaratory Judgment, 3/14/24, ¶ 7; *see also* Trial Court Opinion, 5/17/24, at 2 (unpaginated) (rejecting Husband's challenge to Young's authority).

Vital Records). N.T., 5/2/24, Wife's Ex. 1.[3] The duplicate certificate, which was signed by Young, represented that the parties married in Corry on August 20, 2017; no time was specified. *Id.* The trial court also admitted a copy of the parties' marriage license certificate (marriage license), signed by Young, which indicates the parties married on August 20, 2017, at 6:00 a.m. N.T., 5/2/24, Husband's Exhibit A. The marriage license does not specify the location of the marriage ceremony. *Id.* Instantly, it is undisputed that there are inconsistencies between the marriage license and duplicate certificate. *See*, *e.g.*, Wife's Brief at 11 ("[Wife] concedes that there are inconsistencies between the original marriage license and the filed duplicate [certificate]."); Husband's Brief at 5 (asserting there are "inconsistencies on the marriage license certificates[.]").

Wife, Husband, and Young testified as the only witnesses at the evidentiary hearing. Relevant to the instant appeal, Wife and Young testified that the parties exchanged marital vows, in Young's presence, in Pennsylvania on August 20, 2017; Husband countered no vows were exchanged in Pennsylvania at any time. *See* N.T., 5/2/24, at 16, 29-30, 35-36, 48-49.

---

[3] The parties' marriage record reflects that Husband and Wife each completed marriage license applications, and signed them before the Warren County Clerk of Orphans' Court, on August 11, 2017, consistent with 23 Pa.C.S.A. § 1302 (governing marriage license applications and their required contents). N.T., 5/2/24, Wife's Ex. 1. The marriage record states that on August 20, 2017, the parties married in Corry, Erie County, Pennsylvania, and that Young was the officiant. *Id.*

Wife testified she met Husband in 2013, and the couple dated for several years before planning their wedding in August 2017.  N.T., 5/2/24, at 24. Wife stated that she and Husband discussed plans to have an initial marriage ceremony in Pennsylvania, followed by a beach wedding ceremony in the Dominican Republic.  *Id.* at 25-26.  According to Wife,

> [a]fter I looked into getting married [in the Dominican Republic], it was just so much red tape and it was hard, so [the parties] talked about just getting married [in Pennsylvania] and then just having a ceremony down [in the Dominican Republic], just … for pictures mainly.  …  So [the parties] talked about it and then I asked [Young] if he would [perform the marriage ceremony]. [Young] needed to marry us here in Pennsylvania before we left, that way it was legal, and then we would just have a ceremony down [in the Dominican Republic].

*Id.* at 26; *see also id.* (Wife asserting Husband actively participated in making these arrangements).

Wife testified she, Husband, and Young each had flights scheduled to depart from the Pittsburgh airport (the airport) to the Dominican Republic on the morning of August 20, 2017.  *See id.* at 27-29.  According to Wife, prior to August 20, 2017, Young drove from his residence in Georgia to meet the couple at Wife's residence in Corry.  *Id.* at 28; *see also id.* (Wife stating she also booked Young's "flight[] out of Pittsburgh so we could all fly together."). Wife stated that the night before the flight, she wrote on the marriage license "the date and I wrote 6:00 a.m.[,]" as she presumed that the parties "[would] be sitting at the [airport] terminal about 6:00" a.m. on August 20, 2017.  *Id.*

Wife testified that early in the morning of August 20, 2017, she, Husband, and Young were in Wife's kitchen in her Corry residence, and

> we were all getting our coffee and I said, you know what? I really don't want to take this [marriage license] with us. Can we just do this here? Because I didn't want to take [the marriage license] with us all the way to [the] Dominican [Republic]. So [Husband] and [Young] both said, okay, fine, whatever. … So [Young] asked me if I wanted to marry [Husband]. I said yes. [Young] asked [Husband] if he wanted to marry me and [Husband] said yes[. T]hen [Young] signed it,[4] and we knew the time was wrong, but I was like I really don't want to scribble on this so I just didn't change the time.

*Id.* at 29-30 (footnote added; formatting modified); *see also id.* at 35. Wife stated she, Husband, and Young then drove to the airport to fly to the Dominican Republic. *Id.* at 30.

Wife testified that while she and Husband were driving to the airport, Husband jokingly stated that the parties were not married yet, as "it's not 6:00 o'clock." *Id.* at 35. According to Wife, she responded,

> I said, fine, we'll do [the marriage ceremony] again at 6:00, jokingly. So at the airport we're sitting, … and I looked at my phone and it said 6:01 [a.m.], and I said, okay, we got to do this [ceremony] again. I said [to Husband], do you still want to marry me? And he said, yes, dear, and then we kissed. And I said, good, because I still want to marry you[.]

*Id.* at 35-36 (formatting modified). Wife stated that after arriving in the Dominican Republic, on August 23, 2017, the parties participated in another

---

[4] As explained above, Young signed both the marriage license and duplicate certificate as the officiant.

wedding ceremony, officiated by Young, "for picture reasons." *Id.* at 36; *see also id.* at 39.

Wife testified that the first time Husband questioned the validity of the parties' marriage was after Wife filed for divorce. *Id.* at 42; *see also id.* at 39-40. Wife also introduced evidence, over Husband's objection, of certain legal instruments and other writings representing the parties' status as husband and wife. *See id.* at 36-42.[5]

Husband testified that he first "look[ed] into the legality of the marriage" after Wife filed for divorce in December 2023. *Id.* at 7, 18-19; *see also id.* at 7 (Husband stating he researched the marriage's validity because he does not "believe in divorce"). Husband testified, contrary to Wife, that Young 1) never performed any marriage ceremony with the parties in Pennsylvania; 2) flew directly from Georgia to the Dominican Republic on August 20, 2017, and did not accompany the parties to the airport; and 3) performed a brief

_____

[5] Wife testified that in January 2020, she and Husband secured a residence together in Warren, Pennsylvania, as husband and wife, and introduced the warranty deed into evidence. N.T., 5/2/24, at 36-37; Wife's Exhibit 4; *see also* N.T., 5/2/24, at 19 (Husband confirming he "put the house in Warren into [Wife's] name with [Husband] as a joint owner[.]"). Wife further introduced evidence of a last will and testament she executed on January 20, 2020, wherein she granted the residuary of her estate "unto my husband, [Husband.]" N.T., 5/2/24, at 38; Wife's Exhibit 5. Wife recalled Husband "signing a reciprocal will" on the same date, which named Wife as the residuary beneficiary of Husband's estate. N.T., 5/2/24, at 38; *see also id.* at 20 (Husband confirming he named Wife as his spouse in his will). Wife also testified that Husband gave her numerous cards "over the years as his wife" to celebrate special occasions, and she introduced some of these cards into evidence. *Id.* at 41; Wife's Exhibit 6.

marriage ceremony on the beach in the Dominican Republic on August 23, 2017. *Id.* at 10-12, 16; *see also id.* at 11 (Husband stating Wife "took care of all of the wedding arrangements for the ceremony."). Husband testified that at approximately 6:00 a.m. on August 20, 2017, he and Wife "would have been sitting at the airport waiting to take off for our flight" to the Dominican Republic).

Regarding the parties' Dominican Republic marriage ceremony, Husband testified as follows: "We were basically on the beach and the exact words that I can remember … is [Young] said[,] 'Do you?' which upset [Wife], and that was about it." *Id.* at 12. Husband asserted "there was no actual vows other than just 'Do you?'" *Id.* at 56.

On cross-examination, Husband confirmed that "[w]hether [the parties' marriage ceremony occurred] in Pennsylvania or Dominican [Republic, Husband] accepted the fact that [he was] married by [] Young." *Id.* at 18. Further, when Husband's counsel asked Husband, "[w]hat year did you believe that you were married?", Husband replied, "2017." *Id.* at 8.

Young testified that in the summer of 2017, Wife asked him to officiate the parties' wedding ceremony,[6] and to accompany them to the Dominican

_____

[6] Young testified that after he agreed to officiate the parties' ceremony, he "went online and got ordained" through "American Marriage Ministries" (AMM). *Id.* at 45, 46; *see also id.* at 45-46 (Young stating his usual occupation is as an HVAC technician, and he completed an online course administered by AMM to become an officiant); Wife's Exhibit 7 (Young's AMM certificate).

Republic. *Id.* at 45, 47. Young stated that early on the morning of August 20, 2017, he was with Wife and Husband in the kitchen of Wife's Corry home, preparing to travel together to the airport. *Id.* at 48. According to Young, he and the parties had a discussion

> that we had planned on doing the [marriage] ceremony [] right at the airport before we left, but … I said, well, we ought to do it here, so we did it. … I asked [Wife and Husband] both if they wanted to get married, did that, and then signed the … marriage certificate, and then we left for Pittsburgh and then we were … just telling the story again and [Wife] had wrote [*sic*] 6:00 o'clock [a.m.] on [the marriage license].[7] I said, well, let's just do [the ceremony] again. So I did the same thing again just to make the [time] 6:00 [a.m.]

*Id.* at 48-49 (footnote added; formatting modified). Young testified that he also officiated the parties' Dominican Republic ceremony three days later. *Id.* at 49.

On May 17, 2024, the trial court entered a final order, and accompanying opinion, in both the divorce action and APL action. The order granted Husband's petition for declaratory judgment in the divorce action and sustained Husband's POs to Wife's complaint for APL.[8] In its opinion, the trial

---

[7] Young testified that although he signed the marriage license and duplicate certificate, Wife actually completed the remainder of the documents. N.T., 5/2/24, at 49; *see also id.* at 29 (Wife testifying she completed portions of the documents).

[8] The trial court did not issue separate orders dismissing Wife's divorce action and APL action.

court declared the parties' marriage invalid, reasoning, in relevant part, as follows:

> [T]he predicate question the court must address is the validity of the marriage. [Considered collectively, the marriage license and duplicate certificate] incorrectly lists the time of the marriage[, *i.e.*, 6:00 a.m.,] if the parties accomplished their marriage in Erie County, Pennsylvania[,] or the wrong location if the parties believe that they exchanged vows in Allegheny County, Pennsylvania, so the [marriage] license and record on its face is deficient. … **There is no record of the words exchanged except for** [**Husband's**] **testimony** that he clearly recalls only two words spoken by [Young,] the celebrant[,] at the ceremonial marriage in the Dominican Republic, "Do you?" Without further verbiage, this is at best an incomplete exchange of present intent to marry. While [Wife] provided ample evidence that the parties held themselves out to be married with cards, wills, and a deed, that does not address whether the marriage was valid at the time it was performed. The court concludes that the certificate of marriage is flawed and that no words of present intent were ever exchanged by the parties. Thus, the marriage is not valid.

Trial Court Opinion, 5/17/24, at 2 (unpaginated) (emphasis added; capitalization modified); *see also id.* at 1-2 (unpaginated) ("Neither party … contested the ceremonial beach wedding and no one testified to what words were exchanged in Corry or Pittsburgh. The uncontroverted testimony is that none of the parties were physically present in Corry, PA[,] at 6:00 a.m.[,] to be married as they were traveling to … [the] Dominican Republic from Pittsburgh at 7:00 a.m. on August 20, 2017.").

Wife timely filed notices of appeal on June 7, 2024.[9, 10]  Wife and the trial court have complied with Pa.R.A.P. 1925.

Wife presents two issues for our review:

1. Did the parties create a valid marriage by ceremony on August 20, 2017?

2. Do clerical errors in the marriage license and duplicate [certificate] serve to invalidate the parties' marriage?

Wife's Brief at 6.  As Wife's issues are interrelated, both implicating whether the parties lawfully married in Pennsylvania on August 20, 2017, we address these issues together.

Our standard of review of a declaratory judgment regarding a marriage's validity

> is limited to determining whether the trial court clearly abused its discretion or committed an error of law.  If the trial court's determination is supported by the record, we may not substitute our own judgment for that of the trial court.  The application of the law, however, is always subject to our plenary review.

---

[9] On July 12, 2024, this Court issued an order directing Wife to show cause as to whether the May 17, 2024, order is final or otherwise appealable.  In response, Wife claimed the order "is final in that there are no further remedies for [Wife] to pursue at the trial court level.  Since the trial court ruled there was no marriage, [Wife] has no right to a divorce" or APL.  Response, 7/29/24, at 2; *see also* Pa.R.A.P. 341(b)(1) (a final order is any order that disposes of all claims and of all parties).  This Court subsequently discharged the show-cause order and referred the issue to the merits panel.  We conclude the May 17, 2024, order is final and appealable.

[10] This Court *sua sponte* consolidated the appeals.

- 11 -

*Asumana*, 318 A.3d at 953 (citing *In re Est. of Carter*, 159 A.3d 970, 974 (Pa. Super. 2017) (brackets omitted; formatting modified)).

In *Asumana*, this Court explained the relevant law regarding marriage in Pennsylvania:

It is well-established that "marriage is a civil contract made between parties with the capacity so to contract." *In re Estate of Garges*, 378 A.2d 307, 308 (Pa. 1977). A marriage contract is of a "peculiar nature," however, in that it is "an agreement not so much to do certain things as to place oneself in a legal relationship to another, a relationship which [can] be dissolved only by the state." *Id.* at 308 n.5.

Historically, Pennsylvania has recognized two forms of marriages: ceremonial marriages and common law marriages. *Carter*, 159 A.3d at 974. Ceremonial marriages are weddings or marriages "performed by a religious or civil authority with the usual or customary ceremony and formalities," including obtaining a marriage license prior to the ceremony and subsequently filing a marriage certificate after the ceremony. *Id.* Common law marriages, which were abolished in Pennsylvania effective January 1, 2005, [*see* 23 Pa.C.S.A. § 1103,] were marriages entered into "by the express agreement of the parties without ceremony, and almost invariably without a witness, by words – not *in future* or *in postea*, but – *in praesenti*, uttered with a view and for the purpose of establishing" the matrimonial bond. *Id.* …

Section 1301 of the Marriage Law[, which is part of the broader Domestic Relations Code,] states that "[n]o person shall be joined in marriage in this Commonwealth until a marriage license has been obtained." 23 Pa.C.S.A. § 1301(a)[; *see also id.* § 1301(b) (providing a marriage ceremony may take place anywhere in this Commonwealth)]. To obtain a marriage license, both parties intending to be married must submit written and verified applications for the license. *Id.* § 1302.

*Asumana*, 318 A.3d at 953-54 (footnotes omitted; formatting and some citations modified).

- 12 -

"The purpose of a marriage license, in part, is to allow the Pennsylvania Department of Health to 'from time to time compile and publish statistics derived from' the records of marriage licenses issued in the Commonwealth." *Id.* at 954 n.8 (quoting 23 Pa.C.S.A. § 1106). "The parties intending to be married may have their marriage solemnized by, or without, an officiating individual." *Id.* at 954 (citations omitted).

Instantly, Wife claims the trial court erred in declaring the parties' marriage invalid, sustaining Husband's POs, and granting his petition for a declaratory judgment. *See* Wife's Brief at 7-16. Wife "concedes that there are clerical inconsistencies between the actual marriage times and places in the marriage license given to the parties and the duplicate [certificate] filed with the Orphan[s'] Court Clerk." *Id.* at 7. Wife claims, however, "[t]hose errors are meaningless[,] as the information provided is adequate to provide public record as to the marriage of [the parties] on August 20, 2017[,] and for filing with [DOH –] Vital Records." *Id.* Wife emphasizes that

> [Husband] knew that he and [Wife] were going to marry, knew that [Young] was going to officiate, knew that the marriage had to be performed in Pennsylvania and knew that the marriage license stated August 20, 2017[,] as the marriage date. Until legal proceedings were threatened, [Husband] never questioned the validity of the marriage.[11]

---

[11] In Wife's Pa.R.A.P. 1925(b) concise statement of errors, she claimed Husband's denial of the validity of the parties' marriage was "barred by the Doctrine of Laches in that the parties have relied on the validity of their marriage … for over 6 years and neither party challenged the validity of the marriage until [Wife] filed [for] divorce." Concise Statement, 7/1/24, ¶ 5. *(Footnote Continued Next Page)*

*Id.* at 15 (footnote added).

Wife asserts that at the evidentiary hearing, Husband "admitted that the parties always intended there to be a marriage[,] and their conduct subsequent to August 2017 evidenced the marital bond. [Husband] cannot escape that bond due to a paper technicality." *Id.* at 16; *see also id.* ("[T]he technicalities of the marriage license process are not as significant as the stated intention of the parties to marry and their life together following the [marriage] ceremony."). Wife further argues that her and Young's testimony at the evidentiary hearing was more credible than that of Husband. *Id.* at 11; *see also id.* at 10-11.

Husband counters the trial court correctly declared the parties' marriage invalid, as "the parties did not create a valid marriage by ceremony on August 20, 2017." Husband's Brief at 5. Husband contends this Court may not disturb the trial court's "credibility determinations … [made] at the [evidentiary] hearing." *Id.* at 7 (citing *Anzalone v. Anzalone*, 835 A.2d 773, 781-82 (Pa.

_____

However, Wife abandoned her laches claim on appeal. Moreover, she waived this claim before the trial court for her failure to raise it prior to the court's final order. *See* Trial Court Opinion (1925), 7/31/24, at 5 (finding Wife waived her laches claim, as she "did not address this argument at the time of the [evidentiary] hearing and first addressed this issue on appeal."); *see also Steiner v. Markel*, 968 A.2d 1253, 1257 (Pa. 2009) (citing Pa.R.A.P. 302(a) and stating, "[b]ecause issues not raised in the lower court are waived and cannot be raised for the first time on appeal, a 1925(b) statement can therefore never be used to raise a claim in the first instance." (footnote omitted)).

Super. 2003) (recognizing appellate courts may not "disturb the fact finder's credibility determinations.")).  According to Husband,

> [t]he trial court appropriately judged the credibility of all of the witnesses at the time of the [evidentiary] hearing and correctly determined that [Husband's] testimony regarding the events of August 20, 2017, was more credible than that of [Wife and Young].  The trial court correctly found that the errors and inconsistencies on the marriage license [and duplicate] certificate[] were not mere clerical errors, but they were intentional false statements.

*Id.* at 5.

In its Pa.R.A.P. 1925(a) opinion, the trial court opined it properly declared the parties' marriage invalid, reasoning, in relevant part, as follows:

> The court is aware there is no requirement that specific words be exchanged to witness a marriage.[12]  However, the person attesting to the marriage must be satisfied that the parties agreed to be united in marriage in the celebrant's presence[.]  **The record is devoid of any words being spoken in Pennsylvania** except [Husband's] testimony that the [parties' Dominican Republic marriage ceremony] consisted of [Young asking the parties] the words "Do you?" and each [party] said yes.  The court opines that there was insufficient evidence that a ceremony actually took place in Pennsylvania that was witnessed by the officiant.  Secondly, the alleged [August 20, 2017, marriage] ceremony did not take place in Erie County at 6:00 a[.]m[.,[13]] as

---

[12] We reiterate that common law marriages were abolished in Pennsylvania effective January 1, 2005.  23 Pa.C.S.A. § 1103; *see also Carter*, 159 A.3d at 979 (stating that "a common law marriage contract does not require any specific form of words, and all that is essential is proof of an agreement to enter into the legal relationship of marriage at the present time." (citation, emphasis, and quotation marks omitted)).

[13] We observe that there is no requirement for a valid marriage license to specify the exact time of the marriage ceremony.  *Accord* 23 Pa.C.S.A. § 1302(b) (detailing the required contents of a marriage license application).
*(Footnote Continued Next Page)*

indicated [on the marriage license,] or if [the ceremony] took place in the [parties'] vehicle on the way to the airport, the couple would not be in Erie County but rather in Allegheny County. The court does not consider those errors to be clerical in nature but rather an intentional false statement. The court also recognizes that while there is no formula or words to be spoken, it is unclear from the record when or where the couple married. As the record was confusing at best as to the actual ceremony that may have taken place, the lack of a clear written record was also an indication [of the marriage's invalidity]. [Considered together, the marriage license and duplicate] certificate incorrectly lists the time of the marriage if the parties accomplished their marriage in Erie County, Pennsylvania, or the wrong location if the parties believe that they exchanged vows in Allegheny County, Pennsylvania, so the license and record on its face is deficient. [Young] indicated that he signed the [marriage license and duplicate] certificate …[,] but did not fill out the actual [documents,] as [Wife] took care of that. **There is no record of the words exchanged except for** [**Husband's**] **testimony** that he clearly recalls only two words spoken by [Young] at the ceremonial marriage in the Dominican Republic, "Do you?" Without further verbiage, this is at best an incomplete exchange of a present intent to marry.

Trial Court Opinion, 7/31/24, at 4 (emphasis and footnotes added; citation to record omitted; capitalization modified); *see also* Trial Court Opinion, 5/17/24, at 1 (unpaginated) (finding that "**no one testified to what words were exchanged in Corry or in Pittsburgh**." (emphasis added)). The trial court determined that the parties' marriage license "is flawed and [] no words of present intent were ever exchanged by the parties. Thus, the marriage is not valid." Trial Court Opinion, 7/31/24, at 5.

---

Moreover, the specific location of a Pennsylvania marriage ceremony is irrelevant for purposes of establishing the validity of a marriage license; all that is required is that the ceremony occurred "in any county of this Commonwealth." 23 Pa.C.S.A. § 1301(b).

We conclude the record belies the trial court's finding that there was **no** evidence presented that the parties exchanged marital vows in Pennsylvania on August 20, 2017. As detailed *supra*, Wife and Young both testified that on August 20, 2017, the parties exchanged vows in Pennsylvania on two separate occasions in Young's presence: first, at Wife's Corry residence prior to departing for the airport, and second, at the airport (or during the drive to the airport), at approximately 6:00 a.m. N.T., 5/2/24, at 30 (Wife testifying that while she, Young, and Husband were in Wife's kitchen on the early morning of August 20, 2017, "[Young] asked me if I wanted to marry [Husband]. I said yes. [Young] asked [Husband] if he wanted to marry me and [Husband] said yes[.]"); *id.* at 35-36 (Wife testifying that while she and Husband were at the airport, she "said [to Husband], do you still want to marry me? And [Husband] said, yes, dear, and then we kissed. And I said, good, because I still want to marry you[.]"); *id.* at 48-49 (Young's consistent account that the parties exchanged marital vows first at Wife's residence, and a second time *en route* to the airport).

The trial court found that the parties' "marriage was invalid as there was **no consistent testimony** from any of the parties about the marriage performed in Pennsylvania." Trial Court Opinion, 7/31/24, at 2 (emphasis added). While we acknowledge that Husband, Wife, and Young gave conflicting accounts of the events of August 20, 2017, the trial court never

indicated who, if anyone, it believed.[14, 15]  ***See Lewis v. Lewis***, 234 A.3d 706, 711 (Pa. Super. 2020) ("[C]redibility determinations are within the purview of the trial court[.]").

Our standard of review dictates that we may not disturb the trial court's ruling "[**i**]**f** the trial court's determination is **supported by the record**[.]" ***Asumana***, 318 A.3d at 953 (emphasis added; citation omitted).  As the trial court issued a decision not supported by the evidence of record, we 1) reverse the order declaring the parties' marriage invalid; and 2) remand for further proceedings, wherein the trial court shall make a credibility finding regarding whether the parties exchanged marital vows at any time in Pennsylvania on August 20, 2017.

Order reversed.  Case remanded for further proceedings consistent with this Memorandum.  Jurisdiction relinquished.

---

[14] The record contains no support for Husband's assertion that the trial court "determined that [Husband's] testimony regarding the events of August 20, 2017, was more credible than" the testimony of Wife and Young.  Husband's Brief at 5.

[15] Although we acknowledge the trial court found that the inconsistencies between the marriage license and duplicate certificate (*i.e.*, both documents collectively representing that the parties exchanged marital vows in Corry at 6:00 a.m. on August 20, 2017) constituted "an intentional false statement," Trial Court Opinion, 7/31/24, at 4, the court did not state whether it believed the parties exchanged marital vows in Pennsylvania at any time on August 20, 2017.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/14/2025