533 A.2d 772

**In re ESTATE OF Melba F. WOOD, Alleged Incompetent.**

**Appeal of William J. IRVIN.**

Superior Court of Pennsylvania.

Argued May 6, 1987.

Filed Nov. 19, 1987.

Carl N. Weiner, Lensdale, for appellant.

Douglas A. Gifford, Souderton, for appellee.

Before BROSKY, WIEAND and BECK, JJ.

BECK, Judge:

This is an an appeal by William J. Irvin from an order dismissing exceptions to the denial of his petition to have Melba F. Wood adjudicated incompetent. We affirm the order of the trial court.

Appellant Irvin is the step-nephew of Mrs. Wood. He is the step-son of Mrs. Wood's late husband's brother. In 1982, Mrs. Wood gave appellant's wife Bertha Irvin a power of attorney. In 1984, Mrs. Wood released the power of attorney. She then entered into a revocable inter vivos trust agreement with the Union National Bank and Trust Company of Souderton ("the Bank") which now handles her financial affairs. Shortly thereafter, appellant Irvin filed a petition under the Decedents, Estates and Fiduciaries Code requesting that Mrs. Wood be declared incompetent and that his wife Bertha Irvin be appointed her guardian. *See* 20 Pa.Cons.Stat.Ann. § 5511 (Purdon 1975). The petition alleged that Mrs. Wood was eighty-four years old, that she resided in a nursing home, and that she was unable to manage her property, and was liable to dissipate it or become the victim of designing persons.

The Orphans' Court Division of the Court of Common Pleas of Montgomery County held a competency hearing. Mr. Irvin testified that in recent months Mrs. Wood had appeared very confused. He related the following incidents: Mrs. Wood had claimed that for three days she had nothing to eat at the nursing home although she was well fed; she had attempted to eat breakfast cereal with a fork; she had been unaware that a lens was missing from her glasses; and she had stated on one occasion that her deceased husband would need a sweater the following winter.

Counsel for appellant Irvin called Mrs. Wood to the stand. Mrs. Wood could not accurately state her age, or the name of the nursing home where she lived, or the names of the President of the United States or of the Governor of Pennsylvania. She did not know the purpose of the incompetency proceeding, and she could not describe the difference

between a checking account and a savings account. She also admitted that her memory "sometimes slows up ..." N.T. at 19. However, she was aware that the Bank was managing her money.

Q. Did you want Bertha [to] continue acting as your power-of-attorney in handling your finances?

A. No, we have—for the estate we have the bank, and we're well pleased with it.

Q. Okay. But you decided you didn't want Bertha; is that right? To continue?

A. Well, yes, that's right.

Q. You don't write any checks on your own?

A. No.

Q. You don't make any deposits in the bank on your own?

A. No.

Q. Is the bank doing all that?

A. That's right.

N.T. at 21–22.

At the close of appellant Irvin's case, counsel attempted to introduce into evidence an affidavit from a physician who had treated Mrs. Wood at the nursing home. The trial judge sustained an objection to this evidence on the grounds that it constituted inadmissible hearsay. Counsel for Irvin did not come forward with any other evidence or testimony of a medical nature.

Counsel for Mrs. Wood called as his sole witness a psychiatrist with over twenty-five years experience. The psychiatrist testified that based upon his examination of Mrs. Wood, he had concluded that she showed signs of minimal organic brain disorder. However, he believed that she was competent to make decisions regarding who should assist her with her financial affairs.

The trial judge found that incompetency had not been established and entered an order dismissing Irvin's petition on September 24, 1984. Irvin directly appealed this order and also filed exceptions to the order. On September 22,

1985, Superior Court quashed the appeal as interlocutory and remanded for disposition of the exceptions. *See In Re Estate of Wood,* 355 Pa.Super. 442, 513 A.2d 993 (1986). On October 15, 1986, the trial court dismissed the exceptions and entered its prior order as a final order. Irvin then filed this second appeal.

Appellant Irvin raises three allegations of error. None merits reversal of the trial court's final order.

■ Appellant contends that the trial court erred by refusing to admit into evidence the affidavit of a physician affiliated with the private nursing home in which Mrs. Wood is a resident. Appellant asserts that this affidavit—although hearsay—should have been admitted pursuant to section 5518 of the Decedents, Estates and Fiduciaries Code. That section provides:

> In any hearing relating to the mental condition of a person whose competency is in question, the deposition of, or sworn statement by, a superintendent, manager, physician or psychiatrist of any State-owned mental hospital or veterans' administration hospital or a physician or psychiatrist at any hospital or institution shall be admissible in evidence as to the condition of an inmate of such hospital in lieu of his appearance and testimony, *unless by special order, the court directs his appearance and testimony in person.*

20 Pa.Cons.Stat.Ann. § 5518 (Purdon 1975) (emphasis added).

We need not decide if the affidavit in question falls within the purview of section 5518. The trial court's decision to exclude this document by sustaining an objection to its admission was the functional equivalent of a "special order" directing the treating physician to appear and testify in person. As the trial judge noted in his opinion:

> Notwithstanding the failure of counsel to cite § 5518 to the court at the hearing, the issue was in fact essentially dealt with in accordance with that section. The affidavit was ruled inadmissible, thus by implication (as opposed to a "special order") the testimony of the treating physician

was required—a result clearly authorized by § 5518. Petitioner could have requested a continuance to produce the treating physician. He chose not to do so, and therefore should not now be heard to complain.

Tr. Court Op. at 3–4. Accordingly, we will not reverse on this basis.

■ Appellant next argues that the trial court erroneously assumed that medical testimony in support of a guardianship petition is an absolute prerequisite for a finding of incompetency. At the close of the petitioner's case, the trial judge remarked "I do not think that it is within my power to declare someone incompetent without medical testimony of any kind, and that's the position we find ourselves in at this moment." N.T. at 25. We agree with appellant that this is not a correct statement of law.

Medical testimony is of great significance since it assists the trial court in determining the nature, severity, and consequences of an alleged incompetent's disability. The Pennsylvania Supreme Court has stated in dicta that "[e]xpert testimony is needed when transactions fall within the penumbra between competence and incompetence, when the light of reason may come and go unbidden." *Hagopian v. Eskandarian,* 396 Pa. 401, 404, 153 A.2d 897, 899 (1959), *cert. denied,* 361 U.S. 938, 80 S.Ct. 381, 4 L.Ed.2d 358 (1960). However, the appellate courts have never adopted a rule of evidence which would require the use of expert testimony in all incompetency proceedings without exception. The testimony of lay witnesses who have observed the alleged incompetent is admissible and highly probative since "[o]ne's mental capacity is best determined by his spoken words, his acts, and his conduct." *Urquhart Estate,* 431 Pa. 134, 142, 245 A.2d 141, 146 (1968). *See also Weir by Gasper v. Ciao,* 364 Pa.Super. 490, 494–495, 528 A.2d 616, 619–620 (1987) (court may base finding of competency on evidence provided by lay witness).

■ Although the introduction of expert testimony from psychiatrists, psychiatric nurses, and other health care professionals is to be encouraged, we cannot say that lay

testimony alone can never be sufficient to meet the heavy burden of establishing incompetency. Nevertheless, in the case sub judice, appellant was not prejudiced by the trial judge's comment. The trial judge based his decision to dismiss the guardianship petition on his assessment of the testimony of both Mrs. Wood and the psychiatrist who spoke on her behalf. Tr. Court Op. at 4. We find that the trial judge properly evaluated all of the evidence before him.

Finally, appellant claims that the trial court abused its discretion by failing to find that Mrs. Wood is incompetent. An "incompetent" is defined as:

> ... a person who, because of infirmities of old age, mental illness, mental deficiency or retardation, drug addiction or inebriety:
>
> (1) is unable to manage his property, or is liable to dissipate it or become the victim of designing persons; or
>
> (2) lacks sufficient capacity to make or communicate responsible decisions concerning his person.

20 Pa.Cons.Stat.Ann. § 5501 (Purdon 1975).

A trial court must act with circumspection when applying this definition. As one commentator has noted:

> That guardianship of a person's property is sometimes the only reasonable course does not mean, however, that it is to be embarked upon whenever a person seems to be having property-management problems. The consequences of guardianship are far too dire to be unleashed lightly. In Pennsylvania, the incompetent must relinquish possession of his real and personal property to his guardian. [See 20 Pa.Cons.Stat.Ann § 5521(1) ], who is empowered to "sell, at public or private sale, any personal property of the [incompetent]." [20 Pa.Cons.Stat.Ann § 5151 incorporated by 20 Pa.Cons.Stat.Ann. § 5521(22).] The incompetent is "incapable of making any contract or gift or any instrument in writing...." [20 Pa.Cons.Stat. Ann. § 5524.] This provision may prevent an incompetent from legally marrying, and from executing a valid will, as well as from forming enforceable business con-

tracts and from making valid inter vivos gifts. An incompetent also loses the capacity to initiate lawsuits on his own. [*See* Pa.Rs.Civ.P. 2051–64.] After a person has been declared incompetent, the burden shifts to him, in a petition for termination of the guardianship, to show that he has regained competence. [*See* 20 Pa.Cons.Stat.Ann. § 5517.]

Beyond the direct legal consequences, an incompetent may suffer severe social, commercial, and psychological effects. He is told that he is unable to handle the estate he may have accumulated through years of hard work. It is not difficult to imagine the sense of despair, the loss of dignity, and the frustration that often must rage in the mind of one who is told that the state's "preventative and protective" law will now relieve him of the right to spend his own money freely.

Comment, *An Assessment of the Pennsylvania Estate Guardianship Incompetency Standard*, 124 U.Pa.L.Rev. 1048 (1976) (footnotes omitted).

For all these reasons, the appellate courts have cautioned that a guardianship statute is "a dangerous statute easily capable of abuse ..." *Smith v. Smith*, 365 Pa.Super. 195, 204, 529 A.2d 466, 470 (1987) (Beck, J., concurring) (citing *Myers Estate*, 395 Pa. 459, 462, 150 A.2d 525, 526 (1959)), and have required that the petitioner bear the burden of proving incompetency by clear and convincing evidence. *See Matter of Caine*, 490 Pa. 24, 415 A.2d 13 (1980).

In the instant case, the record indicates that although Mrs. Wood's memory is seriously impaired, she is aware that the Bank is managing her assets and she has consistently maintained that she wants to entrust her money to the Bank rather than to appellant's wife. Moreover, the psychiatrist who interviewed Mrs. Wood concluded that she was capable of choosing a financial representative. Under these circumstances, we conclude that the trial court did not abuse its discretion by finding that appellant did not clearly

and convincingly prove that Mrs. Wood is incompetent within the meaning of the statute.

Order affirmed.

WIEAND, J., concurs in the result.