J-S30003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: THOMAS D. WILLIAMS, AN INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: THOMAS D. WILLIAMS | : : : : : : : | |
| | : | No. 264 WDA 2020 |

Appeal from the Order Dated December 30, 2019
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  No. 11-19-967

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                **FILED AUGUST 18, 2020**

Thomas D. Williams (Appellant) appeals from the order adjudicating him an incapacitated person and appointing Appellee David Williams (Williams) limited guardian of Appellant's person and estate.  Upon review, we affirm.

On October 3, 2019, Williams, Appellant's 55 year-old son, filed an emergency petition requesting that the orphans' court appoint him plenary guardian of Appellant, who was 81 years old at the time and suffering from certain ailments.  Williams asserted that Appellant was legally incompetent under the provisions of Pennsylvania's Probate, Estates and Fiduciaries Code (PEF Code).  **See** 20 Pa.C.S.A. § 101, *et seq.*  At the time, Appellant was a

_____

* Former Justice specially assigned to the Superior Court.

patient at Conemaugh Hospital in Johnstown, pursuant to the Mental Health Procedures Act.[1]  **See** 50 P.S. § 7302 (governing involuntary emergency medical examination and treatment).

On October 3, 2019, the orphans' court determined that Appellant's medical condition and incapacity called for Williams to be appointed temporary plenary guardian of Appellant's person and estate pursuant to 20 Pa.C.S.A. § 5513 (governing emergency guardianships).  The court appointed counsel to represent Appellant, and scheduled a hearing to address Williams' request that the court find Appellant to be an "incapacitated person," as that term is defined in Section 5501 of the PEF Code.  20 Pa.C.S.A. § 5501 (defining "incapacitated person" as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety.").

The orphans' court held a hearing on December 6, 2019 ("the competency hearing"), where it considered testimony from Appellant, who was adamant that he was competent to care for himself and did not want anyone to be appointed as his guardian.  **See** N.T., 12/6/19, at 66-70.

_____

[1] Appellant was admitted to Conemaugh Hospital on two occasions: May 2019 ("the May hospitalization"), and September 2019 ("the September hospitalization").  Appellant was treated for, *inter alia*, alcohol use disorder, alcohol-induced dementia, alcoholic liver disease, and mood disorder.

Appellant testified that his relationship with Williams was "lousy" and he did not often see Williams, who resides in Florida. *Id.* at 57.

Williams testified that he is a board-certified physician in emergency medicine. *Id.* at 5. Appellant resided with Williams in Florida on many prior occasions, and Williams had been Appellant's primary caretaker during those times. *Id.* at 6. Williams explained that he had previously arranged for Appellant to be provided with various services, including meals on wheels, transportation for medical appointments, outpatient psychiatric therapy, and home health care/cleaning. *Id.* at 12-15. According to Williams, Appellant has a long history of alcohol abuse, and his overall health, medical care compliance and cognition was deteriorating. *Id.* at 9-10, 12, 23. Williams further stated that there were multiple questionable ATM withdrawals from Appellant's checking account during the September hospitalization. *Id.* at 18-19. Finally, Williams asserted that, as guardian, he intended to "maintain my father's independence as much as possible to allow him to reside in his house and work with him to the extent possible to care for him." *Id.* at 23.

The court also considered the testimony of Umesh Chakunta, M.D. (Dr. Chakunta), who specializes in geriatric and adult psychiatry, and was deposed two days prior to the competency hearing. Dr. Chakunta was Appellant's attending physician at Conemaugh Hospital during the May and September hospitalizations. We explain Chakunta's testimony *infra*; in sum, he opined

Appellant is medically incompetent and lacks the cognitive capacity to make appropriate decisions regarding his care. **See** N.T., 12/4/19, at 17-18, 35.

At the conclusion of the competency hearing, the orphans' court requested Appellant to undergo a neuropsychological evaluation, per the medical advice of Dr. Chakunta, to assess the degree of Appellant's cognitive deficits. The court ordered that in the interim, Williams would remain temporary plenary guardian, and indicated it would consider the evaluation report when making its final competency determination. Appellant, however, refused to participate in the evaluation; accordingly, Appellant's counsel sent the court a letter requesting that it render a decision based solely on the evidence presented at the competency hearing.

By order entered on December 30, 2019, the orphans' court appointed Williams limited guardian of Appellant's person and estate.[2] Appellant timely filed a counseled notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant presents one issue for our review: Whether Williams "did not meet his burden by clear and convincing evidence that the Appellant is an alleged incapacitated person per 20 Pa.C.S.A. § 5501 of the Pennsylvania Fiduciary Code[?]" Appellant's Brief at 4.

_____

[2] As limited guardian, Williams has certain powers and duties, including managing Appellant's finances, medical care, general care, and residence. **See** Order, 12/30/19, at 2.

- 4 -

We are mindful of our standard of review:

Any person interested in the alleged incapacitated person's welfare may petition the court for a judicial determination that the person is indeed incapacitated and for the appointment of a guardian. 20 Pa.C.S.A. § 5511. However, a person is presumed to be mentally competent, and the burden is on the petitioner to prove incapacity by clear and convincing evidence. **In Re Myers Estate**, 150 A.2d 525, 526 (Pa. 1959). Our review of the trial court's determination in a competency case is based on an abuse of discretion standard, recognizing, of course, that the trial court had the opportunity to observe all of the witnesses, including, as here, the allegedly incapacitated person. **Id.** "A finding of mental incompetency is not to be sustained simply if there is any evidence of such incompetency but only where the evidence is preponderating and points unerringly to mental incompetency." **Id.** at 527.

**In re Hyman**, 811 A.2d 605, 607-08 (Pa. Super. 2002) (citations modified).

Additionally, for an appellant to meet the "heavy burden" of establishing abuse of a trial court's exercise of discretion, it is "not sufficient to persuade the appellate court that it might have reached a different conclusion under the same factual situation." **Fancsali v. Univ. Health Ctr.**, 761 A.2d 1159, 1162 (Pa. 2000).

The PEF Code provides:

To establish incapacity, the petitioner must present testimony, in person or by deposition, from individuals qualified by training and experience in evaluating individuals with incapacities of the type alleged by the petitioner, which establishes the nature and extent of the alleged incapacities and disabilities and the person's mental, emotional and physical condition, adaptive behavior and social skills[, and] … evidence regarding the probability that the extent of the person's incapacities may be significantly lessened or changed.

20 Pa.C.S.A. § 5518. Medical testimony is of great significance since it assists the trial court in determining the nature, severity, and consequences of an alleged incompetent's disability. *In re Estate of Wood*, 533 A.2d 772, 774 (Pa. Super. 1987). However, no rule has been adopted requiring the use of this type of testimony. The testimony of lay witnesses who have observed the person is also admissible and highly probative in evaluating incapacity. *Id.*

Here, Appellant argues that the orphans' court erred in concluding that Williams presented clear and convincing evidence that Appellant is an "incapacitated person" pursuant to Section 5501 of the PEF Code. *See* Appellant's Brief at 9-14. Appellant acknowledges Dr. Chakunta's medical determination that Appellant is incapacitated. *Id.* at 12. However, he argues that portions of Dr. Chakunta's testimony show "deficiencies in this medical conclusion." *Id.* Specifically, the testimony that (1) before the September hospitalization, according to Appellant, he "was still competent enough to know he needed" to call 911 and seek in-patient care at Conemaugh Hospital for treatment despite his abuse of alcohol, *id.* at 13; and (2) Dr. Chakunta had not received any reports of Appellant having abused alcohol since October 4, 2019. *Id.* at 12. Finally, Appellant relies on the holding in *Wood*, *supra*, that the introduction of expert testimony is not always necessary, and lay testimony alone can suffice to establish incompetency. *Id.* at 12; *see also*

*Wood*, 533 A.2d at 774. Appellant essentially argues that his testimony alone was enough for the orphans' court to reject Williams' claim of his incapacity.

We initially observe that the orphans' court appointed Williams **limited** guardian of Appellant's person and estate. *See* 20 Pa.C.S.A. § 5512.1(a)(6) (mandating that court prefer limited guardianships); *see also* N.T., 12/6/19, at 62 (Williams testifying that he preferred limited guardianship). Additionally, Appellant refused the orphans' court's directive to undergo a neuropsychological evaluation, which hampered the court's competency determination. *See* N.T., 12/4/19, at 35 (Dr. Chakunta stating that neuropsychological evaluation would be "much more extensive testing" and very helpful).

Our review discloses sufficient evidence to support the orphans' court's determination that clear and convincing evidence established that Appellant is an incapacitated person. We emphasize the testimony of Dr. Chakunta that while he was providing psychiatric care for Appellant during the May and September hospitalizations, Appellant suffered from multiple ailments, including "fairly severe" alcohol use disorder, alcohol withdrawal, dementia, kidney disease, alcoholic liver disease, and mood disorder. *Id.* at 9, 12-13, 15-16. Appellant's medical and cognitive condition had worsened between the May and September hospitalizations, and Appellant resumed abusing alcohol and was not eating. *Id.* at 13, 14. Dr. Chakunta stated that Appellant had cognitive deficits "in the dementia range," and he had concerns about

Appellant's condition worsening. *Id.* at 35. Further, "[b]ecause of [Appellant's] cognitive deficits, there were concerns about his ability to . . . make appropriate choices when it came to healthcare or managing his day-to-day needs." *Id.* at 17; *see also id.* at 16 (Dr. Chakunta opining that Appellant was "impaired in terms of being able to make the right choice for future nourishment and future care for himself.").

> Dr. Chakunta concluded:
>
> because of [Appellant's] extensive history of alcohol use, his diagnosed history of cognitive deficits and his established history of poor decision making when it comes to his care outside of the hospital, specifically recurrent alcohol abuse, inability to comply with medications, inability to follow through with outpatient care, . . . taking all of that into account, I feel it's reasonable to say that **he does not have the capacity to make reasonable healthcare or financial decisions. And that he would need a suitable alternate person to help him with the same**.

*Id.* at 18 (emphasis added); *see also id.* (Dr. Chakunta opining that Appellant's "best interest and welfare [would] be served by the appointment of a guardian").

We further hold that the primary authority upon which Appellant relies, *Wood*, *supra*, is unavailing. There, the petitioner sought to have his step-aunt declared incapacitated under the PEF Code. *Wood*, 533 A.2d at 773. This Court affirmed the orphans' court's holding that petitioner failed to meet his burden by clear and convincing evidence. *Id.* at 775. In particular, the record showed (1) petitioner's step-aunt consistently maintained that she wanted her bank, not petitioner, to manage her assets; and (2) a psychiatrist

interviewed petitioner's step-aunt, who opined that she was competent to choose a financial representative. *Id.*; *see also id.* at 773 (noting petitioner did not present any admissible psychiatric evidence).

*Wood* is distinguishable. The petitioner in *Wood* did not present any medical evidence, and the step-aunts psychiatrist opined that she was competent. In contrast, Williams presented the **only** medical evidence, the testimony of Dr. Chakunta, who testified that Appellant does not have the capacity to make reasonable healthcare or financial decisions.

In sum, it was within the purview of the orphans' court to consider and weigh the testimony and evaluate credibility. *See In re Estate of Cruciani*, 986 A.2d 853, 860 (Pa. Super. 2009). We discern no abuse of the court's discretion in concluding that clear and convincing evidence established that Appellant was an "incapacitated person." We therefore affirm the orphans' court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2020